**UNITED STATES of America**
**v.**
**Hugh J. ADDONIZIO et al.**
**Appeal of Philip GORDON.**
**No. 71–1163.**

United States Court of Appeals,
Third Circuit.

Argued June 10, 1971.

Decided Sept. 23, 1971.

tained money by inducing fear of financial injury or under color of official right.

Gordon was a member of the City Council of Newark, New Jersey. He was tried as a co-defendant along with the Mayor, Councilmen, high city officials and others. The evidence produced at the trial proved a well-organized conspiracy to extract money from contractors, suppliers and engineers engaged in public work projects for the city. In particular, the facts surrounding the construction of the Southside Interceptor Sewer project and the Southerly Extension of Newark's water supply formed the focus of the evidence produced at the trial. The facts demonstrated that the scheme had functioned according to plan for many years. A more complete recitation of the background and history of the conspiracy can be found in United States v. Addonizio, 451 F.2d 49 (3d Cir. 1971).

There is no doubt that the testimony supports a finding by the jury that a conspiracy did in fact exist. The record describes in detail the organization and infrastructure of the conspiracy, including the public officials who controlled the award of and payment for public works projects, the solicitors and collectors of the extorted money, and the means by which checks could be converted into cash to facilitate the extortionate payments.

The question, then, is whether the evidence supports the jury's conclusion that Gordon had knowledge of the essential nature of the conspiracy. Paul Rigo, a victim of the plot, testified as to co-defendant Boiardo's extortion demands:

> "'You pay me the 10%.' He said, 'I take care of the Mayor. I take care of the Council. I take care of anybody else that has to be taken care of down there.'"

Rigo further testified that when he went to see the Mayor because of his

John W. Noonan, Simon, Denstman & Noonan, and Sam Weiss, Newark, N. J., for appellant.

Garrett E. Brown, Asst. U. S. Atty., Newark, N. J., for appellee.

Before STALEY and ADAMS, Circuit Judges and GARTH, District Judge.

## OPINION OF THE COURT

**PER CURIAM:**

We are being asked here to reverse the conviction of defendant, Philip Gordon, for extortion and conspiracy to commit extortion in violation of the Hobbs Act, 18 U.S.C. § 1951, on the grounds, *inter alia*, that the Government failed to prove that Gordon had knowledge of any conspiracy affecting interstate commerce or obtaining money by the wrongful use of fear or under color of official right, and that the Government failed to prove that Gordon ob-

difficulty in getting paid, the Mayor told him:

" * * * that this was a matter that was really bound into the Council which had to approve the funds, and set up a bond issue and so forth and that this wasn't moving. He realized that, but Boiardo would have to move it and why didn't I go see him."

When a state commission began to investigate the city, co-defendant LaMorte explained to Rigo that the officials would have to be paid off directly. Thereafter, Gordon took money several times from Rigo, not only for himself, but for Councilman Guiliano as well. This fact was established by Rigo's testimony and corroborated by Gordon's grand jury testimony introduced at the trial without objection, and Gordon's diary entries.

Gordon testified that Rigo would give him two unmarked envelopes, one of which was for Guiliano. After opening one and finding $2,000, he invited Guiliano to his office, but did not say why "because I didn't feel it was a subject of a telephone conversation." Gordon knew that taking the money was wrong, and did not report it on his income tax returns because "it was illegal moneys."

■ Once the existence of a conspiracy has been established, only "slight evidence" is necessary to support a jury verdict that an individual was a member of the conspiracy. United States v. Weber, 437 F.2d 327, 336 (3d Cir. 1970). The evidence against Gordon is sufficient to meet that test.

■ Gordon argues nevertheless that the Government failed to prove that he had knowledge regarding the extortionate purpose of the conspiracy. In order to agree to an object of a conspiracy, the conspirator must have knowledge of that objective, but such knowledge may be inferred from the circumstances. See United States v. Gallishaw, 428 F.2d 760, 763 (2d Cir.

1970). The circumstances here, including Gordon's own admissions, his acceptance of the money from Rigo for himself and Guiliano, and his position on the City Council, the very body instrumental in causing Rigo fear of financial injury, permit such inference. Similarly, Gordon, as an attorney and Councilman who voted on the contracts, plans and associated appropriations could not help knowing that the projects and the construction firms involved were closely connected with interstate commerce. All that need be shown is that "[the] defendants conspired to commit extortion, and that the natural effect of carrying out their threat, whether they were conscious of it or not, would affect commerce." United States v. Pranno, 385 F.2d 387, 389–390 (7th Cir.) cert. denied, 390 U.S. 944, 88 S.Ct. 1028, 19 L.Ed.2d 1132 (1968).

■ The judgment of conviction on the substantive counts must also be affirmed. Pinkerton v. United States, 328 U.S. 640, 646, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), teaches that a party to a continuing conspiracy may be held responsible for substantive offenses committed by co-conspirators in furtherance of the conspiracy, even though he neither participated nor had knowledge of them. Id. at 645–648, 66 S.Ct. 1180. And with regard to twelve of the substantive counts, it was actually proved that Gordon received money from Rigo because of the fear of financial injury which the conspirators induced in Rigo. Whether such fear was produced by Gordon or one of the others is immaterial so long as Gordon utilized it to extort money wrongfully from Rigo. Callanan v. United States, 223 F.2d 171 (8th Cir.), cert. denied, 350 U.S. 862, 76 S.Ct. 102, 100 L.Ed. 764 (1955).

We conclude, therefore, that the evidence produced by the Government in this case is sufficient to support the judgments of conviction. We have carefully considered each of the additional issues raised by Gordon and after a thorough review of the record, find

them to be without merit. United States v. Addonizio, 451 F.2d 49 (3d Cir. 1971).

 One final matter warrants comment. Gordon alleges he was denied a fair trial because the Government led him to believe that by foregoing a defense he would be allowed to sever his trial from that of his co-defendants, and would receive other consideration as well. Gordon's counsel frankly admits that there is no direct evidence of that arrangement in the record, but has represented to this Court that such an agreement was consummated with the Government, albeit, *dehors* the record. The United States Attorney, on the other hand, categorically denies making any such promises or representations to Gordon's counsel. This matter, however, is not properly before us. It is "hornbook law" that a court of appeals may consider only facts of record, and it is the record alone which controls the facts. Duran v. United States, 413 F.2d 596, 605 (9th Cir.), cert. denied, 396 U.S. 917, 90 S.Ct. 239, 24 L.Ed.2d 195 (1969); *accord,* United States v. Hedberg, 411 F.2d 607 (9th Cir. 1969); Tanner v. United States, 401 F.2d 281, 288 (8th Cir. 1968), cert. denied, 393 U. S. 1109, 89 S.Ct. 922, 21 L.Ed.2d 806 (1969); Brookins v. United States, 397 F.2d 261, 262 (5th Cir.), cert. denied *sub nom,* Houston v. United States, 393 U.S. 952, 89 S.Ct. 377, 21 L.Ed.2d 364 (1968); United States v. Brawer, 207 F.2d 111 (3d Cir. 1953); United States ex rel. Collins v. Ashe, 176 F.2d 606, 607 (3d Cir. 1949); *see* Sleek v. J. C. Penney Co., 324 F.2d 467 (3d Cir. 1963); Drake v. General Finance Corporation of Louisiana, 119 F.2d 588 (5th Cir. 1941); Bono v. United States, 113 F.2d 724, 725 (2d Cir. 1940). *See also,* Thomson v. Gaskill, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942). Accordingly, this Court is constrained not to consider matters *dehors* the record.[1]

The judgment of the district court will be affirmed.

---

1. In *Brawer,* this Court indicated that a motion under 28 U.S.C. § 2255 would provide a vehicle for proving the existence of any violations of fundamental rights which were *dehors* the record in a criminal trial.