**UNITED STATES of America**

v.

**Barry SIMMONS, Appellant.**

**No. 78–1504.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Dec. 11, 1978.

Decided Jan. 5, 1979.

Stanford Shmukler, Philadelphia, Pa., for appellant; James C. Schwartzman, Peter Rosalsky, Philadelphia, Pa., of counsel.

Peter F. Vaira, U. S. Atty., Alan M. Lieberman, Theodore A. McKee, Asst. U. S. Attys., Philadelphia, Pa., for appellee.

Before ALDISERT, ADAMS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This appeal presents *inter alia* the question whether a grand jury investigation is pending for purposes of the obstruction of justice statute, 18 U.S.C. § 1503, when a subpoena to produce records and to testify before a regularly sitting grand jury has been issued upon application of an Assistant United States Attorney but when at the time of the alleged obstruction of justice the grand jury itself has no knowledge of the subpoena or the matters under investigation.

Barry Simmons was a writ server for the Philadelphia Traffic Court. In mid-July, 1977, two deputy writ servers employed by Simmons reported to the FBI that Simmons was engaged in an illegal scheme of changing the dates on scofflaw notices for which the statute of limitations had run and then mailing such notices. On July 28, 1977, the FBI secured a subpoena ordering the telephone company to produce before a regularly sitting grand jury on August 5, 1977, records of the toll calls made from Simmons' business and private telephones. Also, on August 4, 1977, subpoenas were served on Simmons and several of his employees directing them to appear before the grand jury on August 12, 1977, and to bring records and documents relating to priority scofflaw notifications.

According to the evidence introduced at trial, upon being served with a subpoena, Simmons proceeded to destroy documents in his possession that were referred to in such subpoena and to instruct his employees as to what they were to say to the investigators.[1] For such conduct, Simmons was indicted by the grand jury on August 12, 1978, on two counts of obstruction of justice—the first count charging him with destruction of documents and the second count charging him with instructing his employees to withhold information from the grand jury—and was convicted and sentenced after a jury trial.

■ The obstruction of justice statute imposes criminal sanctions upon anyone who "corruptly . . . influences, ob-

---

1. The government established its case through the testimony of three of the defendant's employees, a tape recording of happenings in the defendant's office subsequent to the service of the subpoena, and documents retrieved from two trash bags seized at the defendant's office by the FBI pursuant to a warrant.

structs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice." 18 U.S.C. § 1503. A prerequisite for conviction is the pendency at the time of the alleged obstruction of some sort of judicial proceeding that qualifies as an "administration of justice."[2] Thus, for example, the obstruction of an investigation that is being conducted by the FBI, or by any similar governmental agency or instrumentality, does not constitute a § 1503 violation because such agencies or instrumentalities are not judicial arms of the government "administering justice."[3] On the other hand, obstruction of a pending grand jury investigation is punishable under the statute.[4]

At issue here is at what point does an investigation by law enforcement officers cross the threshold to become a pending grand jury investigation for purposes of such statute. On this matter, the jury was instructed, over objections by defense counsel,

> that when an Assistant United States Attorney issues a subpoena or subpoenas in furtherance of a grand jury investigation for the purpose of presenting evidence to the grand jury, there is a grand jury investigation pending within the meaning of that statute.[5]

The only evidence submitted on the question of pendency was proof that a grand jury had been constituted and empaneled and that subpoenas were then issued to the telephone company, to Simmons, and to several of his employees, to appear before such grand jury.

Simmons asserts that the jury charge was erroneous and that the evidence was insufficient to establish the pendency of a grand jury investigation on the date he is alleged to have obstructed justice. In support of this assertion, Simmons points out that the evidence fails to establish that at that time the grand jury was investigating, or even had knowledge of, defendant's traffic court activities. Each of the subpoenas to testify before the grand jury set forth on its face that it was issued on application of an Assistant United States Attorney, and no evidence was produced at trial to indicate that such attorney was instructed by the grand jury to obtain those subpoenas or that he was acting as an agent for the grand jury when applying for them. Therefore, Simmons argues, the evidence at best supports the conclusion that there was an investigation by the FBI or the United States Attorney's office, but not that there was a pending grand jury investigation, as required for a § 1503 conviction.

Much of the force behind Simmons' argument is undercut by our discussion of the "pendency" issue in *United States v. Walasek,* 527 F.2d 676 (3d Cir. 1975). There, Judge Hunter disposed of a similar challenge to a conviction under § 1503 in the following manner:

> Appellant would have us adopt a rigid rule that a grand jury proceeding is not "pending" until a grand jury has actually heard testimony or has in some way taken a role in the decision to issue the subpoena. He offers no authority for such a rule, and we are not inclined to adopt it. Appellant is correct in his observation that a grand jury subpoena may become an instrumentality of an investigative agency, without meaningful judicial supervision. Nevertheless, the remedy against potential abuses is not to establish a rule, easily circumvented, by which some formal act of the grand jury will be required to establish "pendency." The remedy is rather to continue to inquire, in each case, whether the subpoena

---

2. *Pettibone v. United States,* 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419 (1893); *United States v. Walasek,* 527 F.2d 676 (3d Cir. 1975); *United States v. Metcalf,* 435 F.2d 754 (9th Cir. 1970); *United States v. Perlstein,* 126 F.2d 789 (3d Cir.) *cert. denied,* 316 U.S. 678, 62 S.Ct. 1106, 86 L.Ed. 1752 (1942).

3. *United States v. Scoratow,* 137 F.Supp. 620 (W.D.Pa.1956).

4. *See United States v. Walasek,* 527 F.2d 676 (3d Cir. 1975); *Shimon v. United States,* 122 U.S.App.D.C. 152, 352 F.2d 449 (1965).

5. Appendix 516a.

is issued in furtherance of an actual grand jury investigation, i. e., to secure a presently contemplated presentation of evidence before the grand jury. *See United States v. Ryan,* 455 F.2d 728 (9th Cir. 1972).

Without attempting to articulate any necessary minimum set of circumstances, we are persuaded that the present record is sufficient to establish the "pendency" of a judicial proceeding.[6]

Simmons submits, however, that unlike *Walasek,* his case does not present the "necessary minimum set of circumstances" required to sustain a jury finding of "pendency." In particular, Simmons distinguishes *Walasek* on the ground that at the time of the alleged destruction of subpoenaed documents under Walasek's supervision a witness had been called—not merely subpoenaed—to testify before the grand jury, and upon his refusal to testify had been granted immunity. Under those circumstances, Simmons asserts, it is clear that the grand jury was already cognizant of, and involved in, the investigation.

To bolster the distinction that he makes between the present case and *Walasek,* Simmons refers us to *Ryan,* which was cited in the *Walasek* passage set out above. In reversing a conviction under § 1503, the Ninth Circuit in *Ryan* noted that there was no proof that the grand jury knew anything about the issuance of the subpoenas,[7] or that the grand jury was in fact investigating any of the matters it was alleged to be investigating.[8] Simmons maintains that the evidence here is analogous to that in *Ryan,* and suggests that when *Ryan* and *Walasek* are read together, they require that the grand jury itself at the very least be cognizant of the investigation.

We disagree with Simmons' interpretation of *Ryan* as well as with the standard for "pendency" which he urges upon us. As already noted in *Walasek,*[9] *Ryan* involved the unusual situation wherein the IRS, unable to secure records by administrative subpoenas, caused an Assistant United States Attorney to obtain the subpoenas and to furnish them to IRS agents for service. The subpoenaed documents were delivered directly to the IRS, and the grand jury to which the matter had been assigned was eventually dismissed without ever having been told about the subpoenas and without investigating any matters related to them. More than fourteen months elapsed before another grand jury indicted Ryan. "Thus, by means of grand jury subpoenas, the I.R.S. obtained the records which it was unable to secure by an administrative subpoena."[10] It was therefore transparent in *Ryan* that, in terms of the *Walasek* test, the subpoenas were not "issued in furtherance of an actual grand jury investigation, i. e., to secure a presently contemplated presentation of evidence before the grand jury."[11]

With respect to whether the grand jury must be aware of the subpoena or involved in the investigation in some other way at the time of the alleged obstruction of justice, it is our view that adding such a gloss to the test laid down in *Walasek* would frustrate the purpose of the obstruction of justice statute. Section 1503 is a contempt statute. It was enacted as the counterpart to 18 U.S.C. § 401, whose reach is limited to conduct occurring in the presence of the court.[12] As such, § 1503 allows punishment of actions taken with the specific intent to impede the administration of justice.[13] So long as a defendant has such specific intent, he may not circumvent the court's contempt power by pressing "empty

6. 527 F.2d at 678 (footnotes omitted).

7. 455 F.2d at 731.

8. *Id.* at 735.

9. 527 F.2d at 680 n. 13.

10. *Ryan, supra,* 455 F.2d at 732.

11. 527 F.2d 678.

12. *Walasek, supra,* 527 F.2d at 680; *United States v. Essex,* 407 F.2d 214 (6th Cir. 1969).

13. *See United States v. Perlstein,* 126 F.2d 789 (3d Cir.) *cert. denied,* 316 U.S. 678, 62 S.Ct. 1106, 86 L.Ed. 1752 (1942).

technicalities."[14] Thus, in *Walasek* we refused to identify "some formal act of the grand jury [that] will be required to establish 'pendency,'" nor adopt "a rigid rule that a grand jury proceeding is not 'pending' until a grand jury has actually heard testimony or has in some way taken a role in the decision to issue the subpoena."[15] The requirement urged by Simmons—that the grand jury be aware of the subpoena or otherwise involved in the investigation at the time of the alleged obstruction of justice—likewise appears not to serve a useful function.

First, such requirement ignores the reality of the manner in which a grand jury operates and the mechanism by which subpoenas are issued. In *In re Grand Jury Proceedings*, 486 F.2d 85 (3d Cir. 1973), we observed, albeit somewhat critically, that

> although grand jury subpoenas are occasionally discussed as if they were the instrumentalities of the grand jury, they are in fact almost universally instrumentalities of the United States Attorney's office or of some other investigative or prosecutorial department of the executive branch.[16]

Moreover, to adopt Simmons' argument would be to create an artificial and unjustified disparity in treatment between persons who impede later phases of a grand jury proceeding and those who were fortunate enough to have been served with the first subpoenas and who then committed acts of obstruction before any evidence was presented to the grand jury. Both groups will have been served with similar subpoenas, issued upon application of an Assistant United States Attorney and directing them to appear before the identical grand jury in connection with the identical investigation. Invariably, they will have performed their acts with the same intent to impede justice, and often with the same knowledge or lack of knowledge as to whether the grand jury itself has already assumed an active role in the investigation.

Furthermore, the prosecutorial authorities could easily nullify the effect of such a rigid rule by adding to their procedures the formal act of advising the grand jury of the subpoena when it is issued.

▆▆▆▆ Consequently, rather than require that the grand jury be cognizant of the subpoena or otherwise involved in the investigation, we hold that an investigation by a law enforcement agency ripens into a pending grand jury investigation for purposes of § 1503 when officials of such agency apply for, and cause to be issued, subpoenas to testify before a sitting grand jury. To the extent that, as demonstrated by *Ryan*, "a grand jury subpoena may become an instrumentality of an investigative agency, without meaningful judicial supervision," we reiterate our conviction that the remedy against such abuse is not to establish a rigid rule, but "rather to continue to inquire, in each case, whether the subpoena is issued in furtherance of an actual grand jury investigation, i. e., to secure a presently contemplated presentation of evidence before the grand jury." *Walasek, supra.*

Besides challenging his conviction on the ground that no grand jury investigation was pending, Simmons raises other grounds for reversal.[17] We have reviewed each of

---

**14.** *See Shimon v. United States,* 122 U.S.App. D.C. 152, 153, 352 F.2d 449, 450 (1965).

**15.** 527 F.2d at 678 (footnote omitted).

**16.** 486 F.2d at 90.

**17.** In particular, Simmons argues that:

1. The affidavit upon which the search warrant was issued did not set forth sufficient probable cause because it was based on double hearsay and contained material misstatements of fact, and the informants and their information were not shown to be reliable;

2. the search of the premises exceeded the scope of the warrant;

3. the trial court erred in its charge by removing from the jury's consideration the question of pendency of a grand jury investigation;

4. the evidence was insufficient to sustain a conviction for obstructing justice because there was no proof that the items destroyed were the items named in the subpoena and because there was no specific proof that defendant instructed potential witnesses to withhold information from the grand jury;

these contentions and find them to be without merit. Accordingly, the judgment of the district court will be affirmed.

5. the trial court erred in charging the jury that it may convict Simmons if it finds that the defendant attempted to influence any one of three persons mentioned in the indictment;
6. the trial court erred in limiting cross-examination of the key government witness as to his prior misdeeds, his prior false statements under oath and prior specific incidents of seeking revenge on others;

7. the trial court erred in refusing to permit the defense to call witnesses to testify to the key witness' prior conduct and characteristics; and
8. the trial court erred in permitting the government to produce extensive evidence of the alleged illegal underlying scheme dealing with priority scofflaw notices.