**UNITED STATES of America**

v.

**Gilbert NELSON, Appellant,
No. 87–5529.**

**UNITED STATES of America**

v.

**George SHAMY, Appellant, No. 87–5561.**

**Nos. 87–5529, 87–5561.**

United States Court of Appeals,
Third Circuit.

Argued June 6, 1988.

Decided July 26, 1988.

Before STAPLETON, GREENBERG and ROSENN, Circuit Judges.

## OPINION

GREENBERG, Circuit Judge.

Gilbert Nelson and George Shamy appeal their convictions for conspiracy to obstruct justice (18 U.S.C. § 371) and obstruction of justice (18 U.S.C. § 1503). We will affirm the conspiracy convictions but, because the district court unreasonably limited the appellants' inquiry on cross-examination of a government witness regarding whether there was a grand jury investigation pending when they allegedly obstructed justice, we will reverse the convictions on the substantive obstruction counts.

### I.

#### Background

These are the germane facts developed at the trial. After rather complicated negotiations, on March 16, 1983 the City of New Brunswick, New Jersey, entered into an agreement to purchase property from Richard Malouf for use as a central garage for the maintenance and repair of city vehicles. Malouf acquired the property earlier that year and closed on it on March 1, 1983. Malouf's purchase had been partially financed with $20,000 invested by James V. Gassaro, the city's police director who was also an attorney sharing offices with Nelson, and with $25,000 borrowed from Gassaro's father-in-law, Joseph Perrone. The interests of Gassaro and Perrone were not disclosed to the city council when it authorized the purchase of the property even though Gassaro was to share in the profits.

When Malouf closed on the sale to the city on May 5, 1983 he received a check for $305,000 from the city which he endorsed and gave to Nelson as the New Brunswick city attorney for deposit in Nelson's attorney's trust account. The proceeds of the check were to be disbursed in accordance with a closing statement prepared by Nelson which showed a total of $96,695.56 due Malouf after deductions from Malouf's pro-

Michael A. Querques (argued), Orange, N.J., for appellant Nelson.

Dino D. Bliablias (argued), Stein, Bliablias, McGuire & Pantages, Livingston, N.J., for appellant Shamy.

Samuel A. Alito, Jr., U.S. Atty., Edna Ball Axelrod (argued), Asst. U.S. Atty., Chief, Appeals Div., Newark, N.J., for appellee.

ceeds for satisfaction of a mortgage and a realty transfer fee, and a credit for outstanding real estate taxes to the city as purchaser. Nelson, however, returned to Malouf a check for only $91,695.56, exactly $5,000 less than due under the statement. Further, Nelson did not pay the $1830.50 which he showed due for the transfer fee or the $1067.50 real estate taxes due.[1] No provision was made at the closing for any distribution to Gassaro or Perrone and their names did not appear on any of the sale documents.

On May 6, 1983 when Malouf went to the Gassaro–Nelson offices to divide the sale proceeds with Perrone and Gassaro, Nelson was there but Gassaro was not. Malouf gave Nelson checks for $20,000 and $25,000 made payable to Gassaro and Perrone, respectively, for their cash contributions and at Nelson's direction he made out a check for $25,000 payable to a defunct paving company to cover Gassaro's share of the profits. In return Nelson gave him a statement showing that this $25,000 was for property improvements but that was a fiction as none were made.

In March 1985, Assistant United States Attorney Thomas L. Weisenbeck, with assistance from the FBI, began an investigation into allegations of corruption in New Brunswick. A grand jury subpoena to Nelson's bank for his records, the first of three grand jury subpoenas secured during the early months of the investigation, was issued on March 7, 1985 from the office of the clerk of the United States District Court pursuant to Weisenbeck's application. In late March an FBI agent visited Malouf and asked to see the closing statement. Although Malouf did not have a copy he obtained one from the attorney who represented him at the closing, an associate of Shamy, and realized for the first time that he had been paid $5,000 less than due.

Nelson soon learned about the investigation from a newspaper reporter and con-

tacted Malouf asking to see his copy of the closing statement. After securing the statement, Nelson added the following language to account for the $5,000 he withheld from Malouf's closing proceeds two years before: "To Seller—$91,695.56. To George Shamy, in payment of outstanding legal fees due him by Richard Malouf—$5,000." At about the same time Nelson also took steps to pay the real estate taxes on the property in an unusual way. Specifically he had the city tax records modified so that a tax payment he made on another property in 1983 was shown as having been partially made on the Malouf property. Naturally this maneuver retroactively created an outstanding balance on the other property which Nelson then paid.

Shamy was served on April 10, 1985 with a grand jury subpoena and on April 16, 1985 he went to the office of the United States Attorney in Newark for an interview. On that occasion he explained that he resigned from the practice of law early in 1983 and entered a hospital in Ohio. He claimed that at the time of his resignation Malouf owed him approximately $5,000 in legal fees and also asserted he borrowed $6,000 from Nelson because of gambling at the racetrack. He said that when he returned from Ohio he arranged for $5,000 to be withheld from Malouf at the closing for payment to Nelson in accordance with a proposal he had made in a letter to Nelson.

Nelson was served with a grand jury subpoena on April 15, 1985, a day before Shamy's interview, and on May 7, 1985 he turned over Shamy's letter, dated April 16, 1983, and a copy of the altered closing statement to the United States Attorney. The letter indicated that Shamy would get Malouf to authorize the withholding of the fees.

During the investigation the government learned that the letter, allegedly dictated by Shamy to his secretary in April 1983, deviated from Shamy's secretary's usual format for correspondence, thus suggest-

---

1. Even though the city was the purchaser there is no question that Nelson should have paid the real estate taxes. There was, however, no transfer fee due on the conveyance as it was exempt.

N.J.Stat.Ann. § 46:15–10(b) (West Supp.1988). Thus no provision for the fee should have been made on the closing statement.

ing it was a fabrication. The secretary later testified at the trial that she could not say with certainty that she did not type the letter, though she did not recall doing so, and pointed out how the letter deviated from her usual format.

Weisenbeck left the United States Attorney's office in September 1985 before any evidence was presented to the grand jury on whose authority he had secured the subpoenas. In due course, the investigation went forward and evidence was eventually presented to a new grand jury. On December 30, 1986 Shamy appeared before the grand jury and testified that while he was in the Ohio hospital he called his secretary in New Jersey and dictated a letter to Nelson suggesting that Nelson withhold the fees due from Malouf at the closing and keep the money as payment for the racetrack loan. Shamy claimed he signed the letter when he returned to New Jersey in April 1983.

Ultimately the grand jury returned an indictment charging Nelson, Gassaro and Perrone with conspiracy to commit mail fraud to deprive the citizens of New Brunswick of honest government (18 U.S.C. § 371) (count 1) and extortion and conspiracy to extort in violation of the Hobbs Act (18 U.S.C. §§ 1951 and 1952) (counts 2 and 3). In addition, Nelson and Shamy were charged with obstruction of justice and conspiracy to obstruct justice. The conspiracy to obstruct justice count (count 4) alleged that Nelson and Shamy had schemed to cover-up Nelson's wrongful withholding of fees, taxes and proceeds due Malouf and the city at the closing by, among other means, fabricating the April 16, 1983 letter and altering the closing statement, and by Shamy giving false testimony before the grand jury. The first of the two substantive counts charging obstruction of justice (count 5) alleged that Nelson and Shamy had obstructed justice by producing the fabricated letter in response to a grand jury subpoena. The second (count 6) charged Nelson with obstruction of justice by altering the closing statement.

There was a subsequent single trial against all the defendants on the entire indictment. The district judge granted Perrone's motion for judgment of acquittal on all counts at the close of the government's case. Though the jury found Nelson, Gassaro and Shamy guilty on all counts, the mail fraud convictions were subsequently dismissed by the judge on the basis of the Supreme Court's decision in *McNally v. United States,* —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), which held that the mail fraud statute does not reach schemes to defraud citizens of their intangible right to honest and impartial government. The judge also granted post-verdict acquittals to Nelson and Gassaro on the Hobbs Act extortion counts as the evidence was insufficient to support the convictions on them, 672 F.Supp. 812. Therefore, the only convictions left undisturbed were those of appellants for obstruction of justice and conspiracy to obstruct justice based on their attempts to cover-up the events relating to the diversion of funds from the proceeds of the property purchase by the city.

## II.

### Obstruction of Justice

#### A.

The obstruction of justice statute provides that whoever "corruptly ... influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined ... or imprisoned ... or both." 18 U.S.C. § 1503. The parties agree that the pendency of some sort of judicial proceeding, which in this case could only be a grand jury investigation, is a necessary prerequisite for a conviction for violation of 18 U.S.C. § 1503. *See United States v. Simmons,* 591 F.2d 206, 208 n. 2 (3d Cir.1979). They disagree, however, over whether the three grand jury subpoenas secured by Weisenbeck prior to production of the letter and closing statement on May 7, 1985 are sufficient to establish that there was a pending grand jury investigation which appellants could have obstructed.

When appellants' attorneys attempted to cross-examine Weisenbeck about the pendency of the grand jury investigation, the trial judge barred much of their inquiry as irrelevant as she believed that if a grand jury was sitting at the time the subpoenas were issued, a judicial proceeding was pending as a matter of law. While the appellants do not dispute that a grand jury was sitting at the time Weisenbeck secured the subpoenas, they argue that inquiry into the pendency of the grand jury investigation should not have ended with establishment of that fact. Thus, in their view, the trial court unreasonably limited their cross-examination and infringed their Sixth Amendment right of confrontation. We agree that the cross-examination was unreasonably limited.

### B.

The grand jury subpoenas served on Nelson, Shamy and Nelson's bank were issued by the Office of the Clerk for the District of New Jersey on standard forms signed by a deputy clerk. Fed.R.Crim.P. 17(a) provides for issuance of subpoenas "signed and sealed but otherwise blank to a party requesting it, who shall fill in the blanks before it is served." Because these subpoenas are issued without meaningful judicial oversight, the pendency of a grand jury investigation cannot be determined from their face alone. Not every investigation in which grand jury subpoenas are used ripens into a pending grand jury investigation for purposes of 18 U.S.C. § 1503. *Simmons*, 591 F.2d at 210.

■ Although the grand jury's role in the early phase of an investigation can be unclear, we have resisted adoption of rigid standards for determining when a prosecutor's inquiry ripens into a grand jury investigation. In particular, we have rejected suggestions that an investigation be deemed pending only if (1) the grand jury actually hears testimony, (2) the grand jury plays an active role in the decision to issue the subpoena, or (3) the grand jury is aware of the subpoena at the time of the alleged obstruction of justice, for such rules can be easily circumvented by the

government and offer the guilty a sanctuary among "empty technicalities." *See United States v. Shoup*, 608 F.2d 950, 962 (3d Cir.1979); *Simmons*, 591 F.2d at 209–10 ("empty technicalities"); *United States v. Walasek*, 527 F.2d 676, 678 (3d Cir.1975) ("easily circumvented"). In place of rigid rules, we have counselled a case by case inquiry into whether the subpoenas were issued in furtherance of an actual grand jury investigation, *i.e.*, whether they were issued "to secure a presently contemplated presentation of evidence before the grand jury." *Walasek*, 527 F.2d at 678, *cited with approval in United States v. McComb*, 744 F.2d 555, 561 (7th Cir.1984), *Shoup*, 608 F.2d at 962, and *Simmons*, 591 F.2d at 210. *See also United States v. Ryan*, 455 F.2d 728 (9th Cir.1972), *discussed in Simmons*, 591 F.2d at 209, *Walasek*, 527 F.2d at 680 n. 13, and *United States v. Vesich*, 724 F.2d 451, 454 (5th Cir.1984). This case by case inquiry is, of course, factual.

### C.

■ In instructing the jury on the obstruction counts, the district judge correctly explained that "a grand jury proceeding is pending for the purposes of this statute if an Assistant U.S. Attorney has issued a subpoena in furtherance of the grand jury investigation." At trial, however, she unreasonably limited inquiry into whether the subpoenas were issued to secure a presently contemplated presentation of evidence before the grand jury.

During cross-examination about his role in the investigation of alleged corruption in New Brunswick, Weisenbeck testified that he scheduled no time for the case before the grand jury prior to leaving the United States Attorney's office in September 1985, he had no recollection of inspecting the records subpoenaed from Nelson's bank, and he could not recall whether those records were delivered to the grand jury before his departure. The judge, however, barred further inquiry into the pendency issue. She explained at sidebar, clearly referring to situations in which a grand jury subpoena has been issued, that if

"there is a sitting grand jury ... there is a judicial proceeding pending. It's not a factual finding. We already have the evidence."

We agree that to establish the pendency of a judicial proceeding for purposes of 18 U.S.C. § 1503 a grand jury must be sitting at the time the subpoena issues; otherwise, the United States Attorney cannot be said to be acting as an agent for that body. The sitting panel, however, need not be the one that ultimately receives the evidence. The difficulty with sustaining the trial judge's ruling, however, is that it would unreasonably interfere with the ability of many defendants to challenge an investigative agency's use of grand jury subpoenas for in larger venues there is seldom an occasion when a grand jury is not sitting. Thus, under her ruling the legitimacy of subpoenas issued during a panel's tenure would be inexorably assured. That consequence cannot be reconciled with our precedents and those of other courts of appeal which have rejected mechanical tests for determining whether proceedings are pending in favor of case by case inquiries into the circumstances surrounding the issuance of grand jury subpoenas.

A party on trial for obstruction of a grand jury investigation alleged to have begun upon the issuance of a grand jury subpoena must be afforded an opportunity to question whether the United States Attorney or his or her representative secured the subpoena in furtherance of a then present contemplation that the subpoenaed evidence would be presented to a grand jury. *Walasek*, 527 F.2d at 678. If a decision has been made to present the matter to the grand jury, it makes no difference whether the ultimate presentation includes all, some or none of the materials actually received in response to the subpoena alleged to have commenced the grand jury investigation. Of course, if those materials are not presented to a grand jury, that may

be relevant circumstantial evidence as to whether the requisite present intention existed at the time the subpoena was issued.

Because the appellants' inquiry on cross-examination into Weisenbeck's intentions in securing the subpoenas was unreasonably limited, we find that the trial judge's ruling constituted reversible error.[2] *See United States v. Newman*, 490 F.2d 139, 145 (3d Cir.1974). The appellants, therefore, must be granted a new trial on counts 5 and 6.

### D.

■ Appellants urge that the evidence at trial was insufficient to support their convictions for obstruction of justice and thus their motions for acquittal should have been granted. We disagree.

It is undisputed that there was an investigation, at least by the United States Attorney and the FBI, into the property purchase and that a grand jury was sitting. Appellants knew of the investigation. The evidence supported a finding that appellants caused documents to be fabricated or modified to make it appear that the proceeds of the sale due Malouf had been legitimately disbursed. Further, while the matter was not presented to a grand jury during Weisenbeck's tenure, we cannot say that the subpoenas could not have been issued in furtherance of a present contemplation to present evidence to a grand jury. This was a rather complicated matter and it is natural that it took time to gather the evidence. In this regard we point out that Weisenbeck indicated that he could not remember seeing the bank records but that sometimes it takes months to get them in response to a subpoena. Furthermore, it is reasonable to infer that his departure from the office about six months after the investigation started may have delayed the matter. In the circumstances, allowing the government the reasonable inferences to be drawn from the evidence, we cannot say

2. The government does not argue that the limitation on cross-examination was harmless. In any event we are not persuaded that it was. The issue involved, the pendency of the grand jury proceeding, involved facts peculiarly within the knowledge of the government. *See Dela-*

*ware v. Van Arsdall*, 475 U.S. 673, 680–84, 106 S.Ct. 1431, 1436–38, 89 L.Ed.2d 674 (1986). Thus, it is difficult to understand how the appellants could develop evidence on the issue except from government witnesses.

that the evidence was insufficient to support convictions on the obstruction counts. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Government of Virgin Islands v. Williams,* 739 F.2d 936, 940 (3d Cir.1984).[3] Nevertheless appellants are entitled to a new trial on counts 5 and 6 for the reasons already set forth.

### III.

#### *Conspiracy to Obstruct Justice*

The appellants join in a three pronged attack on count 4 charging them with conspiracy to obstruct justice in violation of 18 U.S.C. § 371. These attacks are without merit.

#### A.

 First, the appellants argue that count 4 was transformed into a dual-purpose conspiracy embracing both obstruction of justice and mail fraud because it incorporated the first 16 paragraphs of count 1, the mail fraud count. In addition, because the list of "overt acts" attached to count I by coincidence also contained 16 paragraphs, the appellants argue that the jury may have mistakenly imported those acts rather than the first 16 paragraphs of count 1 into count 4.

Our reading of the indictment convinces us that the possibility of confusion suggested by the appellants is remote. The first 16 paragraphs of count 1 are incorporated into each of the five remaining counts for the obvious purpose of identifying the defendants and providing background. Furthermore, in her charge the judge explained that:

The statute setting forth the crime of conspiracy ... which is charged in the *first count,* is Title 18, United States Code, Section 371, which reads: 'If two or more persons conspire [ ... ] to com-

mit any offense against the United States [ ... ], and one or more of such persons do any act to effect the object of the conspiracy, each shall be guilty of an offense against the laws of the United States.' This statute creates a separate and distinct crime from any other crime charged in the indictment. I tell you that the same conspiracy statute is charged in *Count 4.* Each of these conspiracies, however, is charged to have a *different object.*

. . . .

In this case as alleged in *Count 1,* the purpose or plan alleged is that *defendants Nelson and Gassaro,*[4] conspired to commit mail fraud by agreeing to devise a scheme to defraud the City of New Brunswick, its citizens and taxpayers, and to obtain money by means of false pretenses and by using the United States mails or causing the mails to be used to execute their scheme.

In *Count 4,* the purpose or plan alleged is that *defendants Nelson and Shamy* agreed to obstruct justice or endeavored to obstruct justice by fabricating documents, altering records, and producing fabricated and altered documents to federal law enforcement officers while a grand jury proceeding was pending. It is thus clear that the offenses in counts 1 and 4 were so distinct that the possibility that there was confusion between them exists only in the minds of the appellants.

#### B.

 For the second prong of their attack on the conspiracy convictions, the appellants argue that the judge created confusion about counts 1 and 4 by instructing the jury that:

The United States does not have to establish all of the overt acts set forth in the indictment. Indeed, if you find that *just one overt act,* whether specifically

---

**3.** Because of our result, we need not specially address appellants' other challenges to the convictions on counts 5 and 6 though in fact we pass upon them in considering count 4.

**4.** Inasmuch as Perrone's motion for acquittal was granted at the end of the government's case

he was not mentioned as a possible conspirator. Of course, the underscoring of portions of the charge was done by us as the charge was oral. We do not suggest that the district judge emphasized these portions.

*enumerated under Counts 1 or 4* or not was committed by any co-conspirator in furtherance of the conspiracy, then the requirement that the United States establish an overt act has been satisfied as to each member of the conspiracy.

The appellants argue that from this instruction the jury could have concluded that the commission of any overt act alleged in count 1 would be sufficient to prove the conspiracy to obstruct justice alleged in count 4. The likelihood of such confusion is eliminated, however, if the passage is read in context, for the judge also explained that:

> In order to find a defendant guilty of conspiracy in Counts 1 and 4, you must also find beyond a reasonable doubt that one or more overt acts were committed in furtherance of the conspiracy by one or more persons you find to be members of the conspiracy. An overt act is an act knowingly committed by one of the conspirators in an effort to effect, achieve, or accomplish some object or purpose of the conspiracy. The act itself need not be criminal in nature if considered separately and apart from the conspiracy. It may be as innocent on its face as the act of meeting, writing a letter, depositing a check, or talking on the telephone. However, it must be an act that follows and tends toward the accomplishment of the plan or scheme, and must be knowingly done in furtherance of some object or purpose of the conspiracy charged in the indictment.

We have already noted that the judge took great care to distinguish between the conspiracies alleged in counts 1 and 4. Furthermore, the separate lists of overt acts attached to each count reinforce the independence of the conspiracies. Thus, when viewed as a whole, the court's instructions made clear that to return a guilty verdict on count 4 the jury had to find that Nelson or Shamy committed an overt act in furtherance of a conspiracy to obstruct justice, and that to return a guilty verdict on count 1 it was required to find that Nelson or Gassaro committed an overt act in furtherance of a conspiracy to deprive the public of honest government through mail fraud. Inasmuch as the appellants have failed to demonstrate that the evidence was too complex for the jury to compartmentalize, *United States v. Dickens*, 695 F.2d 765, 778–79 (3d Cir.1982), *cert. denied*, 460 U.S. 1092, 103 S.Ct. 1792, 76 L.Ed.2d 359, and 461 U.S. 909, 103 S.Ct. 1883, 76 L.Ed.2d 812 (1983), and likewise have not overcome the presumption that the jury properly followed the court's instructions, *United States v. Restaino*, 405 F.2d 628, 630 (3d Cir.1968), *cert. denied*, 394 U.S. 904, 89 S.Ct. 1012, 22 L.Ed.2d 216 (1969), we find no grounds for a new trial on count 4 in appellants' selective reading of the jury charge.

### C.

■ For the third prong of their attack on the conspiracy convictions, the appellants argue that they were denied a fair trial due to the prejudicial spillover of irrelevant matters from the mail fraud (count 1) and Hobbs Act extortion counts (counts 2 and 3) on which the jury returned guilty verdicts but which the judge later dismissed. They indicate that the prejudice to them was aggravated by the trial judge's failure to grant their motions for acquittal on counts 2 and 3 at the end of the government's case.[5] The mail fraud and Hobbs Act charges related to events culminating in May 1983. The conspiracy to obstruct justice focused on activities starting almost two years later and related to a cover-up of how the proceeds of the sale were disbursed rather than the legitimacy of the basic transaction. Indeed, no overt act in

---

**5.** The judge reserved judgment on the motion. The government concedes this was an error. *United States v. Neary*, 733 F.2d 210, 218 (2d Cir.1984). We find that the error was harmless. In any event the prejudice to a defendant from reservation on a motion for acquittal is wholly distinct from the prejudice appellants assert here. Fed.R.Crim.P. 29(a) is construed to require that the judge grant a motion for acquittal at the close of the government's case if the evidence is insufficient to sustain a conviction because if the court reserves on the motion the defendant may risk having to decide whether to offer evidence and thereby waive his claim that the government's case was insufficient. *Neary*, 733 F.2d at 219.

count 4 is alleged to have been committed prior to March 26, 1985. Further, the judge instructed the jury that:

Each offense, and the evidence pertaining to it, and to each defendant, should be considered separately. The fact that you may find one or more of the defendants guilty or not guilty of one of the offenses charged should not control your verdict as to any other offense or any other defendant charged.

In addition, she told the jury that count 4 charged that appellants had conspired and agreed to conceal that Nelson had unlawfully diverted funds from Malouf and the city by altering and fabricating documents and by causing these altered and fabricated documents to be turned over to federal law enforcement officials during the course of a grand jury investigation. In the circumstances we cannot understand why the jury would not have been able to consider count 4 apart from the first three counts. Clearly the judge's cautionary instructions and explanation of the charges neutralized the threat of prejudice and the appellants were afforded a fundamentally fair trial. *See United States v. Brown*, 583 F.2d 659, 669 (3d Cir.1978), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979).

### D.

■ Shamy raises an additional challenge to his conviction for conspiracy to obstruct justice. Noting that there is no direct evidence linking him to several of the overt acts allegedly committed by Nelson in furtherance of the conspiracy, including alteration of the closing statement and alteration of city tax records, Shamy complains that he may have been convicted of conspiracy on the basis of acts he neither authorized nor adopted. We, however, are satisfied that the jury could reasonably have found there was a conspiracy between Shamy and Nelson to obstruct justice and there were overt acts committed in furtherance of the conspiracy during its existence.

Thus, Shamy was responsible for the acts even if committed by Nelson. *See United States v. Riccobene*, 709 F.2d 214, 225 (3d Cir.)., *cert. denied*, 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983); *United States v. Addonizio*, 449 F.2d 100, 102 (3d Cir. 1971), *cert. denied*, 404 U.S. 1058, 92 S.Ct. 737, 30 L.Ed.2d 746 (1972).

At trial the United States presented evidence that: (1) Nelson withheld $5,000 from Malouf's closing proceeds without informing Malouf he was doing so; (2) two years later, upon learning about Weisenbeck's investigation, Nelson altered Malouf's closing statement, adding a notation representing that $5,000 had been withheld on Shamy's behalf; (3) when interviewed by Weisenbeck, Shamy claimed that he had proposed that Nelson withhold $5,000 from Malouf; (4) Nelson produced a letter dated April 16, 1983 in which Shamy outlined his proposal that Nelson withhold $5,000 from the proceeds; (5) at his appearance before the grand jury, Shamy testified that he had dictated the letter to his secretary while in Ohio and had signed it upon his return to New Jersey; and (6) Shamy's secretary could not recall preparing such a letter and noted numerous differences between the letter produced by Nelson and her usual format for such correspondence. Although different results could be fashioned from this evidence, the jury could find beyond a reasonable doubt that appellants worked together to cover-up Nelson's wrongful withholding of funds from both the city and Malouf. Further, there was evidence which the jury seems to have accepted that Shamy himself committed overt acts in furtherance of the conspiracy by fabricating the April 16, 1983 letter and by giving false testimony to the grand jury.[6]

### E.

■ Although we reverse the substantive obstruction convictions on the basis of the district court's improper limitation of

---

6. We also reject Shamy's challenges to the judge's denial of his pretrial motion to dismiss based on prosecutorial misconduct before the grand jury, to her denial of his motion for severance, and to her ruling allowing the government to caution the jury not to speculate on the significance of his failure to testify after his own attorney drew the jurors' attention to it. We have studied the judge's rulings on these matters and find them to be correct.

Weisenbeck's cross-examination, our ruling is not fatal to the conspiracy convictions. The district court instructed the jury as follows with respect to the count charging a conspiracy to obstruct justice:

> [It is not] necessary that the United States prove that the conspirators used all of the means that are charged in the indictment. It is sufficient if the United States proves, beyond a reasonable doubt, that the conspirators knowingly and intentionally agreed to endeavor to try to obstruct justice by one of the means charged, and that one or more of the conspirators thereafter undertook some specific overt act charged in the indictment with the intent to accomplish this unlawful goal.

With regard to Count 4, it is also not necessary that the United States prove that a grand jury proceeding was pending at all times when defendants conspired to obstruct justice. It is sufficient if the United States proves defendants entered into such a conspiracy expecting that judicial proceedings would be instituted in the future and committed an overt act in furtherance of the conspiracy after grand jury proceedings began.

To the extent this instruction requires that an overt act occur after the grand jury proceedings began, it may have been unduly favorable to the defense. However, it correctly reflects the law of this Circuit that one can conspire to obstruct an anticipated but as yet uncommenced grand jury proceeding. *United States v. Messerlian*, 832 F.2d 778, 792–93 (3d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1291, 99 L.Ed.2d 501 (1988); *United States v. Perlstein*, 126 F.2d 789, 795–96 (3d Cir.), *cert. denied*, 316 U.S. 678, 62 S.Ct. 1106, 86 L.Ed. 1752 (1942). Given the court's instructions, the jury's conclusion of guilt necessarily reflects findings that Nelson or Shamy willfully agreed to obstruct the grand jury investigation referred to in count 4 and that, for the purpose of ob-

structing that proceeding, one of them committed at least one of the alleged overt acts. No more is required to support their conviction for conspiracy. We further note that count 4 does not charge defendants with conspiring to obstruct a "pending" grand jury investigation. While it does describe the grand jury investigation as having commenced in March 1985, the allegations are sufficiently detailed that there could have been no confusion as to what the government alleged the defendants had done. Accordingly, there was no amendment of or material variance from the indictment. *United States v. Asher*, 854 F.2d 1483, 1496–98 (3d Cir.1988).[7]

## IV.

### *Conclusion*

For the reasons stated above, we will reverse the convictions for obstruction of justice on counts 5 and 6 and affirm those for conspiracy to obstruct justice on count 4. The matter will be remanded to the district court for a new trial on counts 5 and 6 and for further proceedings consistent with this opinion.

---

7. Appellants argue that the verdict on count 4 was undoubtedly based on the jury's finding that the acts alleged in counts 5 and 6 had been committed and that a reversal on counts 5 and 6 thus requires a reversal on count 4. We reject this argument. Our reversal on counts 5 and 6 is predicated on the restriction of cross-exami-

nation which could have developed information germane to whether there was a grand jury investigation in progress when the appellants allegedly obstructed justice. Certainly the verdict on counts 5 and 6 makes it clear that the acts were committed.