UNITED STATES of America

v.

Cornelius J. KORITKO, Appellant.

No. 88–3135.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 14, 1989.

Decided March 28, 1989.

Richard S. Stern, Washington, D.C., (appointed by the Court), for appellant.

Thomas C. Black, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell, Washington, D.C., and John Dominguez, Asst. U.S. Attys., were on the brief, for appellee.

Before STARR, BUCKLEY and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge:

For threatening bodily harm to the President and Mrs. Reagan, appellant Cornelius Koritko was convicted in U.S. District Court of two counts of violating a provision of the District of Columbia Code, 22 D.C.Code Ann. § 507 (1981). The Government tried Koritko upon an information grounded entirely upon local (District of Columbia) law; for that reason, we are convinced that the charging document was insufficient to provide the federal district court with jurisdiction. Accordingly, the conviction must be vacated.

I

Koritko's erratic behavior in the White House on April 5, 1988 led to his arrest and indictment, on May 17, 1988, charging him with committing two federal felony offenses.[1]  See 18 U.S.C. § 871(a) (1982) (pro-

---

1.  On a public tour of the White House, Koritko crossed a dividing rope and entered the East Room, a restricted area.  When Secret Service Officers confronted Koritko, he held a folder aloft and said, "I am going to kick the President in the keister.  I am going to hurt the President."  Transcript at 22.  Officers seized the folder and found within an envelope marked "Tapes to Nancy Reagan."  The officers played the tapes within the envelope and found them to contain similar threats, directed against Nancy Reagan, recorded by Koritko.

Upon conviction, the trial court sentenced Koritko to two concurrent periods of six

hibiting threats "to inflict bodily harm upon the President of the United States"); 18 U.S.C. § 879(a)(2) (1982 & Supp. IV 1986) (prohibiting same upon "a member of the immediate family of the President"). On August 2, 1988, however, the Government filed a "superseding" information, charging Koritko with two counts of violating the District of Columbia's prohibition of "threats to do bodily harm." 22 D.C.Code Ann. § 507 (1981) (misdemeanor). The information, critically, contained no counts alleging violations of federal law.

Koritko subsequently waived his right to a jury trial on August 31, 1988, the same day the trial judge dismissed the indictment upon the Government's motion. In September 1988, the case proceeded to trial upon the local charges as contained in the information. The trial court found Koritko guilty on both counts. This appeal followed.

## II

The parties have framed the issue before us as whether certain of Koritko's acts constituted a criminal offense defined by the District of Columbia's statute punishing threats. Koritko argues that his "Tapes to Nancy Reagan" may have contained a threat, but were not adequately "communicated," as required by cases interpreting the statute. *See, e.g., Beard v. United States,* 535 A.2d 1373 (D.C.1988); *United States v. Baish,* 460 A.2d 38 (D.C. 1983); *see also* Brief for Appellant at 7–10. The Government responds that sufficient evidence supports the conclusion that Koritko communicated his threat. *See* Brief for Appellee at 7–11. But as we alluded to at the outset, a threshold issue confronts us. That problem (which, commendably, the Government brought to our attention) is that a flaw exists in the jurisdictional prerequisite to the District Court's proceeding with Koritko's trial at all—and the pre-

requisite to the court's rendering a valid judgment.

### A

Congress has circumscribed the federal courts' ability to try defendants accused of committing offenses defined by the law of the District of Columbia. The United States District Court for this district possesses jurisdiction over charges of local offenses only if the "offense is joined in the same information or indictment with any Federal offense." 11 D.C.Code Ann. § 502(3) (1981). Courts examining this provision have found its language to be "unequivocal." *See United States v. Jackson,* 562 F.2d 789, 799 (D.C.Cir.1977); *United States v. Shepard,* 515 F.2d 1324, 1329 (D.C.Cir.1975).

The flaw in the prosecution and trial of this case is, quite simply, that they proceeded in the United States District Court despite the failure of the charges of violations of D.C.Code offenses to be "joined in the same information or indictment with any Federal offense." 11 D.C.Code Ann. § 502(3). The original indictment contained charges relating to federal offenses. The superseding information, however, contained only charges of D.C.Code violations. The Government never joined the charges of violations of local and federal offenses in the *"same* information or indictment." *Id.* (emphasis added); *see* Brief for Appellee at 2 n. 1 (conceding that "the local charges were never technically joined in the same indictment or information as the federal counts" and that "[t]here was no actual joinder here").

Cases interpreting this allocation of jurisdiction make clear that proper joinder of local and federal offenses is a necessary prerequisite to proceeding with trial in federal court upon any local charge. The offenses must be properly joined in accordance with Rule 8(a), Fed.R.Crim.P.[2] *See United States v. Kember,* 685 F.2d 451, 454 (D.C.Cir.) (*"Kember II"*), *cert. denied,*

---

months' probation (along with two suspended, concurrent sentences of 179 days' imprisonment, with credit for time served).

**2.** Fed.R.Crim.P. 8(a) provides:
    **Joinder of Offenses:** Two or more offenses may be charged in the same indictment or

information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or

459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982); *United States v. Kember*, 648 F.2d 1354, 1359 (D.C.Cir.1980) ("*Kember I*") ("[S]o long as an indictment properly joins federal and local offenses under Fed.R. Crim.P. 8 . . ., Congress intended to give the federal court power to try the local offense."); *United States v. Jackson*, 562 F.2d at 793 ("The word 'joined' in [11 D.C. Code Ann. § 502(3)] must be construed to mean 'properly joined under Fed.R.Crim.P. 8.'"). Fed.R.Crim.P. 8(a), in turn, governs "Joinder of Offenses" and in certain circumstances permits "[t]wo or more offenses [to] be charged in the same indictment or information in a separate count for each offense." *See supra* n. 2. Like the statute at issue, Rule 8(a) prescribes that joinder of offenses (here, federal and local) be accomplished in the *same* information or indictment. In this case, as we have seen, the information set forth the local charges while the later-supplanted indictment contained solely federal charges. No single charging document joined the federal and local offenses.

### B

■ The Government suggests that the District Court's retention of jurisdiction in this case was within its discretion. *See* Brief of Appellee at 2 n. 1.[3] That argument conflates two inquiries: first, whether there has been proper joinder of the federal and local charges and, second, whether following proper joinder, the District Court must relinquish jurisdiction over the local charges once the federal charges are dismissed (or otherwise do not remain before the court). The statute guides the former inquiry, and its clear language provides no basis for discretion in deciding whether the local offense must be "joined in the same information or indictment with [a] Federal offense." 11 D.C.Code Ann. § 502(3). In contrast, the second inquiry does indeed allow the District Court a measure of discretion. *See, e.g., Kember II*, 685 F.2d at 454–55; *Kember I*, 648 F.2d at 1359–61. However, that discretionary decision (whether to retain jurisdiction over the local charges once the federal charges fade) arises only after the court satisfies the statutory requirements and thus initially possesses jurisdiction over the local charges. *See Kember I*, 648 F.2d at 1360 ("While Congress conferred power on the U.S. District Court to try local offenses whenever those offenses are properly joined with a federal offense [the first in-

---

transactions connected together or constituting parts of a common scheme or plan.

**3.** At oral argument, counsel for the Government also suggested that the requisites of the jurisdictional statute may be met because the D.C.Code offense charged in the information was a lesser included offense of the federal violation charged in the indictment. The Government candidly admits that it knows of no cases directly supporting this argument, but points us to *United States v. Jones*, 527 F.2d 817 (D.C.Cir. 1975). In that case, however, a single indictment properly charged the separate federal and local offenses. *Jones* holds, 527 F.2d at 820–21, as did *Shepard*, 515 F.2d at 1324, that a single trial in federal court may include charges of federal and local offenses predicated upon the same underlying acts. *Shepard*, of course, unstintingly applied the terms of 11 D.C.Code Ann. § 502(3).

*Jones* does touch upon the Government's argument by stating that "[s]ince successive prosecutions on identical or lesser included D.C. and federal offenses emanate from the same sovereignty, they are precluded by double jeopardy considerations." 527 F.2d at 821. However, that sovereignty (reflected in the acts of Congress) intended in the clearest language to allocate jurisdiction between the federal courts and

the District of Columbia courts according to whether the local and federal offenses are properly joined in the same indictment or information. *See supra* p. 739.

Indeed, the Government would have us exempt from the clear Congressional statement contained in § 502(3) an entire, potentially open-ended class of cases in which the local offense could be conceived as a lesser included version of the federal offense (and, perhaps, vice versa). This theory would also require us to abrogate the principle that the U.S. District Court's jurisdiction over local offenses is established only when the joinder of offenses complies with the requirements of Fed.R.Crim.P. 8(a). *See supra* pp. 739–740. While we recognize that peculiarly federal interests may support prosecution in federal court of acts eventually charged as local offenses, the Government may readily pursue that course as long as it complies with the simple charging procedures completely within its control.

Especially in view of the absence of persuasive authority, we decline the Government's invitation to create such a broad exception to the clear language of § 502(3), informed by the clear language of Rule 8(a).

quiry], Congress did not instruct the federal forum to exercise that power without regard to the exigencies of the particular case [the second inquiry].”). The District Court, lacking power to adjudicate this case, had no discretion to retain jurisdiction.

\*      \*      \*      \*      \*      \*

For the foregoing reasons, we are constrained to reverse and remand this case to the District Court with instructions to vacate the underlying conviction.

*It is so ordered.*