UNITED STATES of America

v.

**Michael K. SMITH.**

**Crim. No. 89–0464.**

United States District Court, District of Columbia.

Jan. 30, 1990.

John Dominguez, Asst. U.S. Atty., Washington, D.C., for U.S.

R. Dennis Osterman, Lerch, Early, Roseman & Frankel, Bethesda, Md., for Michael K. Smith.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

Presently before the Court is defendant's motion to dismiss the indictment.[1] The issues have been fully briefed and were argued before the Court on January 22, 1990. In accordance with the Court's oral ruling from the bench, and for the reasons set forth below, the Court shall grant the motion.

**1.** Because of the disposition of this motion the Court need not address the other pretrial motions currently pending.

**2.** The government explains in its papers that counterfeit cocaine was manufactured, resembling cocaine and designed to pass the standard

## I. BACKGROUND

Defendant Michael K. Smith (a/k/a "Smitty") was an officer of the Metropolitan Police Department ("MPD") assigned to the Sixth District at the time of his arrest. He is 42 years old and had been with the Department for 20 years at the time he retired in August 1989. His arrest was the culmination of an investigation by the Internal Affairs Division of the MPD, commenced sometime in 1988. The government represents that the investigation was prompted by numerous complaints, mostly from accused drug dealers, who claimed he had "shaken them down" and "skimmed" from seized drugs and money.

After investigating the complaints, Internal Affairs set up a series of "sting" operations. The first one failed when defendant did not take the "bait," declining to carry out the staged assignment. The third and last one also failed because defendant and his partner detected the Internal Affairs' presence and shouted "set up!". The second attempt, however, led to the present charges.

On August 25, 1988, an undercover officer assumed the identity of a fictitious drug dealer, "Anthony Holly." He was given $386 dollars of government money. In addition, 18 packets of government-manufactured counterfeit cocaine[2] were placed in a trash can near the "dealer" on a corner in Southeast, D.C. An "anonymous tip" was created with the necessary details, and defendant and his partners, Officers Harvey Barber and Edwina Williams, were dispatched to investigate and make the arrest. Defendant seized the cocaine and Officer Williams seized the money. Internal Affairs video taped the entire arrest. According to the government, defendant then confirmed the suspicions against him by turning in only 15 of the 18 packets (although

field test, because Internal Affairs "did not want to be in a position of causing the introduction of real cocaine into the community." Government's Opposition to Defendant's Motion to Dismiss at 3 (hereafter cited as "Opp. at ___").

he logged in 16).[3]

This incident forms the sole basis for the charges in the indictment, filed November 30, 1989. Specifically, the indictment charges defendant with one federal and two local offenses, committed on August 25, 1988: 1) obstruction of justice in violation of 18 U.S.C. § 1503; 2) tampering with evidence in violation of 22 D.C.Code § 723; and 3) theft in violation of 22 D.C.Code §§ 3811, 3812. It is the sufficiency of the federal charge alone, however—on which hinges this Court's jurisdiction over the case—that is the subject of the present motion.

## II. ANALYSIS

■ The Court has carefully analyzed the parties' contentions and is compelled to hold that the charge of obstruction of justice under 18 U.S.C. § 1503 in this case is fatally deficient on two, somewhat overlapping grounds: first, that there were no "judicial" proceedings pending at the time of defendant's conduct, and, second, that any imminent proceedings may not have been in federal court. To the extent defendant's remaining contention that "[i]t was legally impossible for Officer Smith to obstruct justice in the manner alleged" bears on these issues, the Court rejects it.[4]

### A. *Lack of Pending Judicial Proceedings*

The Court's analysis, of course, must start with the language of the statute. Section 1503 provides, in full, as follows:

3. The government also represents that Officer Williams only handed in $286 of the $386 seized, but has not been prosecuted.

4. Memorandum in Support of Defendant's Motion to Dismiss Indictment at 7 (hereafter cited as "Motion at __"). Specifically, defendant contends that because "Officer Smith is charged with obstructing the non-prosecution of a nonexistent crime, it was factually impossible for Officer Smith to have committed the offense which has been alleged." Motion at 7. Contrary to this argument, it is well settled that the doctrine of impossibility provides no defense to the charge of obstruction of justice under Section 1503. *See Osborn v. United States,* 385 U.S. 323, 333, 87 S.Ct. 429, 434, 17 L.Ed.2d 394 (1966); *United States v. Bucey,* 876 F.2d 1297, 1314 (7th Cir.1989) ("'the impossibility of accomplishing the goal of an obstruction of justice

### Influencing or injuring officer or juror generally

Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1503.[5]

The structure of the statute reveals its two operative parts: 1) the specific prohibitions against endeavoring to influence, intimidate or impede any grand or petit juror, or officer; and 2) the so-called "omnibus" or "catch-all" clause, prohibiting any endeavor to influence, obstruct or impede

does not prevent a prosecution for the endeavor to accomplish the goal' ") (quoting *United States v. Brimberry,* 744 F.2d 580, 583 (7th Cir.1984), *cert. denied,* — U.S. —, 110 S.Ct. 565, 107 L.Ed.2d 560 (1989)); *United States v. Williams,* 874 F.2d 968, 981 (5th Cir.1989). For example, the fact that a government agent playing a "fictional" role was involved is unavailing as a defense. *See Bucey,* 876 F.2d at 1314.

5. Section 1503 is a venerable statute, dating to 1831, reflected perhaps in the convoluted way it is drafted. *See generally United States v. Howard,* 569 F.2d 1331, 1336 (5th Cir.) (discussing legislative history, origins in Act of March 2, 1831, 4 Stat. 487), *cert. denied,* 439 U.S. 834, 99 S.Ct. 116, 58 L.Ed.2d 130 (1978); *United States v. Brand,* 775 F.2d 1460, 1466 (11th Cir.1985) (discussing history and purposes).

"the due administration of justice." *E.g., Brand,* 775 F.2d at 1464. In the present case, defendant is charged with violating the omnibus clause by "endeavor[ing] to corruptly influence, obstruct and impede ... the due administration of justice by breaching his duty as a police officer when he intentionally failed to preserve property that he had lawfully seized...." Indictment at Count I.

The omnibus clause was obviously designed, as its name suggests, to reach a broader variety of endeavors to obstruct justice than those specifically enumerated in the other clauses. As one court has described it, it "was drafted with an eye to 'the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted, a variety limited only by the imagination of the criminally inclined.'" *United States v. Griffin,* 589 F.2d 200, 206–207 (5th Cir.1979) (quoting *Anderson v. United States,* 215 F.2d 84 (6th Cir.1954), *cert. denied,* 348 U.S. 888, 75 S.Ct. 208, 99 L.Ed. 698 (1954)), *cert. denied,* 444 U.S. 825, 100 S.Ct. 48, 62 L.Ed.2d 32 (1979). Nonetheless, the scope of the clause is not unlimited. Some courts have invoked the doctrine known as *ejusdem generis* to rein in its reach, limiting it to conduct "similar" to that specifically covered. *See, e.g., Haili v. United States,* 260 F.2d 744, 746 (9th Cir.1958), *cited in United States v. Brown,* 688 F.2d 596, 598 (9th Cir.1982); *United States v. Essex,* 407 F.2d 214, 218 (6th Cir.1969). Even courts rejecting that doctrine have found "the most natural construction of the clause is that it prohibits acts that are similar in result, rather than manner, to the conduct described in the first part of the statute." *Howard,* 569 F.2d at 1333.[6]

The most critical limitation on the clause for purposes of defendant's present motion, however, is that the conduct relate to a "pending judicial proceeding." The government argues that this limitation applies only to the first part of the Act and

does not limit the omnibus clause. The Court has exhaustively reviewed the case law, however, and must agree with defendant that the cases speak with one voice on this question. *See, e.g., United States v. Capo,* 791 F.2d 1054, 1070 (2d Cir.1986) ("To obtain a conviction under this section, the government must show that there was a pending judicial proceeding, such as a grand jury proceeding, ... and the defendant knew of and sought to influence, impede, or obstruct the judicial proceeding....") (citations omitted), *reh'g granted on other grounds,* 817 F.2d 947 (2d Cir. 1987) *(en banc); United States v. Walasek,* 527 F.2d 676, 678 (3d Cir.1975) ("[A] pre-requisite for a conviction for obstruction of justice under the final clause of 18 U.S.C. § 1503 is the pendency of some sort of judicial proceeding which equates to an "administration of justice.") (citations omitted); *United States v. Vesich,* 724 F.2d 451, 454 (5th Cir.1984) ("A prerequisite to any violation of section 1503 is the existence of a pending judicial proceeding known to the violator.") (citations omitted); *United States v. Risken,* 788 F.2d 1361, 1368 (8th Cir.) (same), *cert. denied,* 479 U.S. 923, 107 S.Ct. 329, 93 L.Ed.2d 302 (1986); *United States v. Ryan,* 455 F.2d 728, 733 (9th Cir.1972) ("[I]n order to constitute an offense under Section 1503, the act charged must be in relation to a proceeding pending in the federal courts...."). No case has exempted the omnibus clause from this limitation. Indeed, the United States Court of Appeals for the Fifth Circuit has suggested that the omnibus clause would be "unconstitutionally vague" absent this limitation. *See Howard,* 569 F.2d at 1336 & n. 9 *(dictum ).*

Several roughly analogous cases hold that obstruction of a criminal investigation, absent any related pending judicial proceeding, does not fall within the statute. *See Brown,* 688 F.2d at 598 (interference with execution of search warrant in connection with police investigation not covered); *United States v. Fayer,* 573 F.2d 741, 745

6. The Fifth Circuit has also somewhat limited the clause by defining the term "administration of justice" as " 'the performance of acts required by law in the discharge of duties such as appear-

ing as a witness and giving truthful testimony when subpoenaed.'" *Id.* at 1334 n. 4 (citation omitted).

(2d Cir.) (conduct "under U.S.C. § 1503 must relate to an investigation by the grand jury, not the F.B.I."), *cert. denied,* 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978); *United States v. Scoratow,* 137 F.Supp. 620, 622 (W.D.Pa.1956) (investigation by F.B.I. not pending judicial proceeding: "The Federal Bureau of Investigation is an investigating rather than a judicial arm of the government."); *United States v. Ellis,* 652 F.Supp. 1451, 1452–53 (S.D. Miss.1987) (investigation by a state narcotics bureau in cooperation with the local U.S. Attorney insufficient to trigger Act, even where grand jury impaneled).

Furthermore, the few cases that are cited in the government's brief do not support its position that the pendency of judicial proceedings is not an essential element under the omnibus clause. In *United States v. Haldeman,* 559 F.2d 31 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977), the issue was not raised and, in any case, the Watergate grand jury investigation and related judicial proceedings were apparently pending at all material times. In *United States v. Gonzales–Mares,* 752 F.2d 1485 (9th Cir.), *cert. denied,* 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985) the court expressly held that judicial proceedings were properly deemed "pending" although no criminal complaint had been filed. *Id.* at 1490–91. The government simply misreads *United States v. Friedland,* 660 F.2d 919 (3d Cir. 1981), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2268, 73 L.Ed.2d 1283 (1982). A careful reading of that case reveals that the defendants were in fact charged under Section 1503 with endeavoring to cause a witness "to render false and misleading testimony before a duly empaneled United States Grand Jury." *Id.* at 929 (quoting indictment). The Third Circuit's opinion in *United States v. Shoup,* 608 F.2d 950 (3d Cir. 1979), is similarly unhelpful to the government, as grand jury proceedings were also pending in that case, and it is often cited for the very proposition the government contests that "[c]ourts have interpreted this section as applying only to interference with a pending *judicial* proceeding." *Id.*

at 959 (emphasis in original), *quoted in Brown,* 688 F.2d at 598.

Finally, *United States v. Messerlian,* 832 F.2d 778 (3d Cir.1987), *cert. denied,* 485 U.S. 988, 108 S.Ct. 1291, 99 L.Ed.2d 501 (1988), involved a *conspiracy* to obstruct justice under 18 U.S.C. § 371, with Section 1503 as the underlying offense, and the Third Circuit has long held that a conspiracy may be complete even though the substantive offense under Section 1503 has not ripened due to the lack of a pending judicial proceeding. *Id.* at 792–93 (quoting *United States v. Perlstein,* 126 F.2d 789, 796 (3d Cir.), *cert. denied,* 316 U.S. 678, 62 S.Ct. 1106, 86 L.Ed. 1752 (1942) ("there is nothing to prevent a conspiracy to obstruct the due administration of justice in a proceeding which becomes pending in the future from being cognizable under [the conspiracy statute]")); *see also United States v. Nelson,* 852 F.2d 706, 715 (3d Cir.) ("one can conspire to obstruct an anticipated but as yet uncommenced grand jury proceeding"), *cert. denied,* —— U.S. ——, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988). Rather than undermining defendant's argument, these conspiracy cases reaffirm that "to convict on the substantive offense of obstructing justice, a judicial proceeding must be pending." *Nelson,* 852 F.2d at 793.

Perhaps the most forceful argument in favor of defendant's motion, however, is one he did not make: That the statutory context of Section 1503 confirms that Congress intended the existence of pending judicial proceedings to be required. The compass of Sections 1510 ("Obstruction of criminal investigations") and 1512 ("Tampering with a witness, victim, or an informant") under the same chapter of the Code are particularly telling. Congress specifically enacted Section 1510 " 'to plug a loophole in the protection the Government can provide to its own witnesses and informants' by extending protection to persons who wish to convey information to federal officials before the commencement of judicial or other proceedings." *United States v. Lester,* 749 F.2d 1288, 1298 & n. 11 (9th Cir.1984) (quoting H.R.Rep. No. 658, 90th Cong., 1st Sess. (1967), and noting that "[c]ommencement of judicial proceedings

invokes the protection of 18 U.S.C. § 1503"). Section 1512 was similarly added in 1982 with the express provision that "an official proceeding need not be pending or about to be instituted at the time of the offense." 18 U.S.C. § 1512(e)(1). *See generally United States v. Hernandez*, 730 F.2d 895, 898 (2d Cir.1984) ("By enacting § 1512 congress intended to remedy perceived inadequacies in the existing § 1503 by providing more extensive protection for witnesses and others."); *United States v. DiSalvo*, 631 F.Supp. 1398, 1402 (E.D.Pa. 1986) (same), *aff'd mem.*, 826 F.2d 1057 (1987). *Cf. Brown*, 688 F.2d at 598 & n. 3 (noting that conduct of interfering with execution of search warrant already covered by 18 U.S.C. § 2232).

■ That judicial proceedings be pending at the time of defendant's conduct is thus a *sine qua non* of a charge under Section 1503. In the present case, there is no dispute that at the time of the defendant's actions, no criminal charges had been filed, and no grand jury investigation or proceeding was pending.[7] The government argues that defendant's conduct falls within the statute because "[h]e had every reason to believe that when he arrested [Anthony Holly, the undercover officer] and seized the suspected drugs, that judicial proceedings would have been imminent." Opp. at 10. The government candidly conceded at argument, however, that it found no cases supporting this "imminence" theory. Under this theory, as defendant points out, any offender aware of his imminent arrest and prosecution by federal authorities who conceals evidence of the crime could potentially be charged with obstruction of justice under Section 1503. Furthermore, almost by definition, anything a police officer does in investigating a case and making an arrest potentially affects an "imminent" judicial proceeding. The Court is compelled to reject this boundless reading of Section 1503, especially where it is highly uncertain that the imminent proceedings here would even have been in federal court.

### B. *Lack of Federal Judicial Proceedings*

■ Defendant argues that, even if proceedings were deemed "pending", those proceedings would have been in the local court, not in federal court as required by Section 1503. The United States District Court for the District of Maryland has held that the District of Columbia Superior Court is not a "court of the United States" for purposes of the statute. *United States v. Regina*, 504 F.Supp. 629, 630 (D.Md. 1980). The government apparently does not dispute the correctness of this holding, but argues that "[w]hether the imminent proceedings were [in] Superior Court [or] U.S. District Court is of little consequenc[e] because under 11 D.C.Code § 1916, a grand jury serving in the District of Columbia may return an indictment in Superior Court [or] U.S. District Court, without regard to whether it is impaneled in Superior Court rather than District Court." Opp. at 10 (typographical errors omitted).[8]

The Court finds the government's hypothetical argument too speculative a basis for federal jurisdiction.[9] Firstly, as a factual matter, the only indications currently in the record are that the case would have been initially prosecuted in Superior Court. More importantly, as a matter of law, the theoretical possibility that a federal indictment could be brought does not seem sufficient. While it has been held that the defendant need not *know* that the pending

7. Following his arrest on the sting, the undercover officer posing as Anthony Holly was booked and was set to be presented the next day in Superior Court before Judge Berg on charges of possession with intent to distribute cocaine. *See* Defendant's Exhibit B. The local police chief then had to write a confidential letter to the United States Attorney's office requesting them to "no paper" the case, which was done. *See* Defendant's Exhibit A.

8. The government is correct that D.C.Code Ann. § 11–1916(a) provides that "[a] grand jury serving in the District of Columbia may take cognizance of all matters brought before it regardless of whether an indictment is returnable in the Federal or District of Columbia courts."

9. Because a grand jury was never convened in this case, the Court need not reach the question whether local grand jury proceedings could be deemed "federal" by virtue of D.C.Code Ann. § 11–1916(a).

proceedings are federal in nature in order to be charged under Section 1503, those proceedings must *in fact* be federal for the charge to lie. *See United States v. Ardito*, 782 F.2d 358, 362 (2d Cir.), *cert. denied*, 476 U.S. 1160, 106 S.Ct. 2281, 90 L.Ed.2d 723 (1986).

In sum, the Court holds that no "judicial" proceedings were pending at the time of defendant's conduct and that, in any case, there is an insufficient basis for finding that any proceedings would have been federal. Count I of the indictment must therefore be dismissed. The sole remaining question is the fate of the remaining local charges in the indictment.

### C. *Relief: Dismissal Versus Transfer*

Defendant argues that the only appropriate course once the sole federal count is dismissed is outright dismissal of the entire indictment. The government submits that the case should instead be "transferred to Superior Court (not dismissed)." Opp. at 5 (citing *United States v. Koritko*, 870 F.2d 738 (D.C.Cir.1989)). The proper analysis of this issue, however, is not as simple as either party suggests. Indeed, although the Court reaches the same conclusion, the government too quickly concedes that the local charges should be remitted to Superior Court.

█ The Court is acutely aware from past experience that it possesses jurisdiction over charges of local offenses only if the "offense is joined in the same information or indictment with any Federal offense." *Koritko*, 870 F.2d at 739. The charges must be literally in the "*same* information or indictment." *Id.* at 740 (emphasis in original).[10] In addition, the local and federal charges must be "properly joined" under Rule 8(a) of the Federal

Rules of Criminal Procedure.[11] *Id.* (citing *United States v. Jackson*, 562 F.2d 789, 793 (D.C.Cir.1977)). If these threshold jurisdictional requirements are met, then the district court has the limited discretion to retain jurisdiction over the local charges even though the federal charges have "faded" from the case. *Koritko*, 870 F.2d at 740 (citing *United States v. Kember*, 648 F.2d 1354, 1359 (D.C.Cir.1980) ("*Kember I*"); *United States v. Kember*, 685 F.2d 451, 454 (D.C.Cir.) ("*Kember II*"), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982)). In order to retain jurisdiction over the local charges, the court must find "that retention of the case is warranted by remaining matters of legitimate federal concern." *Kember II*, 685 F.2d at 454 (no abuse of discretion in retaining jurisdiction over local burglary charges where burgled buildings were federal, including United States Courthouse).

█ In the present case, the federal and local offenses were joined in the same indictment and indisputably are based on the same "act or transaction" for purposes of Rule 8(a). Whether the federal and local charge may be deemed "properly joined" where the federal charge is found fatally deficient on a pretrial motion to dismiss, however, remains unclear. This precise question has apparently never been addressed. The Court's reasoning in *Kember I* suggests that it is immaterial how the federal charge "fades," and that that term may encompass "*any* disposition of the federal offense, subsequent to proper joinder in an indictment." 648 F.2d at 1359 (emphasis added). In any event, because the Court would not retain jurisdiction over the local offenses even if it had the discretion to do so, it need not decide the issue. The

---

**10.** This "same information or indictment" rule was the jurisdictional defect in *Koritko*, as the federal and local offenses were never physically joined in the same instrument and the defendant ultimately went to trial only on the basis of an information containing the local charges, after the indictment containing the federal charges was dismissed on the government's motion.

**11.** Rule 8(a) provides as follows:

**Joinder of Offenses.** Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. Fed.R.Crim.P. 8(a).

Court can see no basis, and the government has proffered none, for finding that matters of "legitimate federal concern" remain. *Kember II*, 685 F.2d at 454.

■ Nor has the government proffered any authority for the proposition that this Court has the ability to "transfer" the case to Superior Court. In fact, the government, through the same United States Attorneys office, has taken a contrary position in another criminal case currently before the Court, arguing there that "[t]his Court does not ... have authority to transfer a case from this Court to the Superior Court where local statutes, not federal law, apply and where the judges are appointed pursuant to Article I as opposed to Article III." Government's Supplemental Opposition to Defendants' Motion to Dismiss at 2 n. 1, *United States v. Barnes*, No. 89–0372. While there is authority that the Court may transfer a case with District of Columbia charges to another *federal* district court under Rule 21(b) of the Federal Rules of Criminal Procedure, *see United States v. Benjamin*, 623 F.Supp. 1204, 1216–17 (D.D.C.1985), there is no precedent in law or practice of which the Court is aware for transferring to Superior Court. The only course, therefore, is dismissal.

### CONCLUSION

Accordingly, the Court shall dismiss the indictment in its entirety, without prejudice to reindictment or prosecution on any federal or local charge which still lies.[12] And in doing so, the Court in no way intends to diminish the seriousness with which it views the conduct charged.

---

**12.** In particular, nothing in this Court's opinion precludes the government from seeking reindictment on a local charge of obstruction of justice, as the scope and interpretation of local provisions is a matter of local law.