**UNITED STATES of America, Appellee,**

v.

**Michael Joseph JOHNSON, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Dolores Y. ELLIOTT, Appellant.**

**Nos. 93–3149, 93–3150.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 8, 1994.

Decided Feb. 7, 1995.

James C. Savage, Washington, DC, argued the cause and filed the briefs for appellant Johnson.

Marian Flynn, Washington, DC, argued the cause and filed the briefs for appellant Elliott.

Timothy J. Heaphy, Asst. U.S. Atty., Washington, DC, argued the cause for appellee. With him on the brief was Eric H. Holder, Jr., U.S. Atty., and John R. Fisher and Thomas C. Black, Asst. U.S. Attys., Washington, DC.

Before SILBERMAN, BUCKLEY, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Appellant Michael Joseph Johnson was convicted on five drug and firearm related charges; Dolores Yvette Elliott on one count of aiding and abetting Johnson in the possession of an unregistered firearm. Johnson raises challenges to the sufficiency of the evidence and to the admission of certain evidence at trial. As to one count, that of possessing drugs with the intent to distribute within 1000 feet of a school in violation of 21 U.S.C. § 860(a), we conclude that the evidence was insufficient and reverse as to that charge only. Elliott challenges the district court's jurisdiction over her District of Columbia violation. As to Elliott's single conviction and the other convictions of Johnson, we affirm.

## I. BACKGROUND

On January 4, 1993, United States Park Police officers, executing a search warrant, knocked on the door of the Washington, D.C., home of the Johnson family and announced their presence. Hearing footsteps running towards the back of the house and seeing a shadow pass by a front window, they became concerned that suspects might be fleeing or destroying evidence, and forcibly opened the door. Inside, they found three of Johnson's relatives. One officer at the back of the house saw Johnson come out the back door and flee almost immediately after the lead officer had knocked at the front door. Several officers chased Johnson into a wooded area, where he was apprehended.

The police searched the house. In one of the upstairs bedrooms they found a film canister containing ten bags of crack cocaine and a loaded Glock .45 caliber pistol on top of a stereo speaker. They also found in a dresser in that room a bag containing 113 smaller bags of crack cocaine, more ammunition in the room's closet, the box for a Glock pistol under the bed, a speed loader and belt holster for a .45 caliber pistol, and a police scanner. In the same bedroom, the officers found numerous documents bearing Johnson's name, including bills, his birth certificate, and his social security card. In the hallway, officers found two brown bags containing packaging and cutting materials, including bags like those containing crack cocaine found in the bedroom. The police also seized a 1987 Acura Legend from in front of the house, which was registered to Johnson.

After the search, Johnson was arrested. During the booking process, he told the police that he was employed as a sales clerk at the Sports Factory sporting goods store. Johnson also told the police that the drugs did not belong to anyone in his family or to his girlfriend, Dolores Elliott.

Thereafter, the federal grand jury indicted Johnson on one count of possession with intent to distribute more than five grams of cocaine base, one count of possession with intent to distribute more than five grams of cocaine base within 1000 feet of a school, one count of use of a firearm during a crime of drug trafficking, one count of possession of an unregistered firearm in the District of Columbia, and one count of possession of ammunition for an unregistered firearm in the District of Columbia. Elliott was named as a co-defendant in the last two counts, which charged violations of the D.C.Code. Elliott moved to dismiss the counts against her, arguing that the district court lacked jurisdiction to hear the non-federal charges. The court denied the motion.

At trial, Johnson's sister testified that the room where the drugs and gun were found was Johnson's room and that she had seen him in the house shortly before the police arrived. Johnson's mother testified that Elliott lived with Johnson in his room during the month before the search. Park Police Officer Schmidt testified that the large quantity of cocaine, along with the packaging materials, cutting tools, police scanner, and

other items found were consistent with the distribution of crack cocaine. He also testified that drug dealers use guns to protect themselves, as well as their drugs and money, and that a dealer usually keeps his gun ready and exposed at home for prompt use. Further, he identified the type of Glock gun found as one commonly used by drug dealers.

The government presented testimony by the owner of the Sports Factory, Cindy Kim, who stated that while she recognized Johnson from the area around her store, he had never worked there. The co-owner of a car dealership also testified that Johnson made regular $300 fortnightly payments on the Acura. Additionally, the owner of Freestate Arms, a gun shop in Maryland, testified for the government. He stated that Elliott and Johnson came into his store together in January 1992, Elliott approached him and stated that she wished to buy a Glock gun, and she filled out an application for approval of the sale by Maryland police. This application included information about the gun's serial number and other identifying characteristics that matched the gun found in Johnson's bedroom. The gun store owner further testified that when the application was approved, Elliott returned to the store to retrieve the gun.

The jury found Johnson guilty on all five charged counts and found Elliott guilty of aiding and abetting Johnson's possession of the unregistered gun but acquitted her of the charge of aiding and abetting Johnson's possession of ammunition.

## II. DISCUSSION

### A. *Johnson's Appeal*

#### 1. The 21 U.S.C. § 860(a) violation

■ Johnson asserts that the district court erred in denying his motion for judgments of acquittal as to two counts of the indictment and in admitting evidence that he had committed another wrongful act by lying when he stated that he worked for the Sports Factory. The only assignment of merit is his assertion that the government introduced insufficient evidence to prove that he violated Title 21 U.S.C. § 860(a) (Supp. II 1990), which provides an enhanced penalty for drug law violators who distribute, possess with intent to distribute, or manufacture a controlled substance within 1000 feet of a school. In support of its charge that Johnson violated this provision, the government inexplicably offered evidence not of the distance from a school to the point in the house where Johnson possessed the drugs, but only of a measurement made by Officer Reid from Randle Highlands Elementary School to a point five feet up the walkway to Johnson's house.[1] Johnson argues correctly that the government must prove beyond a reasonable doubt all of the elements of the offense with which the defendant is charged, *see, e.g., Patterson v. New York,* 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (1977), and that based upon the improper terminal point of the measurement, the government failed to carry its burden of proof.

■ The government notes that the measurement made by Reid was a pedestrian travel route, and that a straight line measure, rather than a pedestrian travel route, may be used for purposes of establishing a violation of this statute. *See United States v. Clavis,* 956 F.2d 1079, 1088 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1619, 123 L.Ed.2d 178 (1993); *United States v. Watson,* 887 F.2d 980, 981 (9th Cir.1989); *United States v. Ofarril,* 779 F.2d 791, 792 (2d Cir.1985) (per curiam), *cert. denied,* 475 U.S. 1029, 106 S.Ct. 1231, 89 L.Ed.2d 340 (1986). Thus, under this rule, a person may be convicted of possessing with intent to distribute crack cocaine within 1000 feet of a school even if the distance by street is over 1000 feet, as long as the straight line distance between the site of the possession with intent to distribute and the school is within 1000 feet.

As the evidence at trial showed that Officer Reid diverted from a straight line path because of obstacles such as buildings, the

---

1. We do not determine whether proof of the point of possession requires the diagonal occasioned by his possession on the second floor or whether a measurement to the corresponding point on the first floor would be sufficient, as the government's evidence in this case does not establish either measurement.

government's position is that a straight line distance to the property would be a good deal shorter than 994 feet. This, the government argues, would easily have established that the point at which Johnson possessed the drugs was within 1000 feet of the school. It is entirely possible—perhaps probable—that this is true. If so, we have no idea why the government did not prove it. For it to be both true and sufficient to make out the violation, Reid's pedestrian measurement (994 feet) must exceed the straight line distance between the two points measured by a number of feet greater than the sum of six feet and the distance between the end of Reid's measurement and the point of Johnson's possession. Since there is no evidence of either the straight line measurement or the distance between the terminal point of Reid's measurement and the point of possession, it is impossible to determine whether or not this equation is true. Therefore, the government cannot prevail.

The government relies on *United States v. Watson*, 887 F.2d at 981, where the court upheld a conviction for violating 21 U.S.C. § 845a(a) (1988), the precursor to section 860(a), on evidence that "did not establish that the distance from the nearest point of the school property to the exact location of the [violation] was less than 1000 feet, but only that the distance between the nearest point of the two property lines was 922 feet." However, the government's reliance is misplaced. In that case the government also offered "[e]vidence ... in the form of a map clearly show[ing] that the distance between the property line closest to the school and the property line farthest from the school was significantly less than 78 feet." *Id.* Therefore, the evidence before the court in *Watson* did establish that any point within the property was less than 1000 feet from the school. While the same may be true of the property in the present case, the government, for whatever reason, offered no map establishing that fact. Nor did it provide any other evidence from which the jury could establish that the possession occurred within 1000 feet from a school. Accordingly, Johnson's conviction on this charge cannot stand.

## 2. The 18 U.S.C. § 924(c) violation

■ Johnson also questions the sufficiency of the evidence of possession of a firearm during and in relation to a drug trafficking offense under 18 U.S.C. § 924(c) (1988). Johnson's arguments are fully disposed of by *United States v. Bailey*, 36 F.3d 106 (D.C.Cir.1994) (in banc). Under section 924(c), the government must show: 1) that the defendant used or carried a firearm, and 2) that the use or carrying of the firearm was during and in relation to a predicate offense. *Id.* at 114. As to the first element, in *Bailey* we determined that Congress intended "use" to have a broad meaning and that, in the context of the section, one who avails himself of a gun by putting or keeping it in a particular place from which he can gain access to it if needed to facilitate a drug crime, uses the gun. *Id.* at 114–15. We further concluded that because possession with intent to distribute is a continuing offense, the government need only prove that the defendant put or kept the gun in that particular place at some point while he illegally possessed the drugs. *Id.* at 115.

■ To satisfy the second requirement, the gun must facilitate or have the potential of facilitating the drug trafficking offense. *Id.* As using a gun to protect one's drugs or drug paraphernalia by positioning it to be available for use during ongoing drug activity is a prohibited use of the gun under section 924(c), *id.* at 116, when there is "sufficient evidence for a jury to find that the defendant at some time during the commission of the predicate drug offense put or kept a firearm in a place where it would be proximate to and accessible from a place that is clearly connected to his drug trafficking," such as a place used to store or distribute drugs, "the jury may also infer that the gun was being used to protect the drug trafficking operation, and was therefore being used in violation of § 924(c)." *Id.*

In the instant case, there was ample evidence that Johnson kept the gun in a place accessible from a place connected with his drug trafficking since the loaded gun was found on top of a speaker next to some packaged drugs and in the room where other drugs were stored. Accordingly, there was

sufficient evidence that Johnson possessed a firearm in violation of section 924(c).

### 3. The admission of evidence of Johnson's false statement

█ Johnson's final argument is that the admission of evidence of his false statement concerning his employment was in violation of Federal Rule of Evidence 404(b), which precludes "evidence of other crimes, wrongs, or acts ... to prove the character of a person in order to show action in conformity therewith." However, such evidence "may ... be admissible for other purposes...." Here, such other purpose is present. Johnson's statement about his employment apparently was an attempt to explain his ability to acquire an expensive car, a gun, and various items of jewelry found by the police during the search of his room, and Kim's testimony demonstrating that the statement was untrue suggested that he was concealing the actual source of his income, drug dealing. Thus, the district court did not err in admitting this evidence since it reflected an attempt to avoid the charge against Johnson of possession with intent to distribute drugs. *See United States v. Inserra,* 34 F.3d 83, 89 (2d Cir.1994) (evidence of misrepresentation admissible to demonstrate knowledge or intent to conceal ownership of asset and rebut innocent explanation). Accordingly, the evidence of Johnson's prevarication comes under the inclusionary provision of Rule 404(b) rather than the exclusionary provision of Rule 404(a), and the court did not err in admitting it.

█ Johnson further argues that even if the evidence was admissible under Rule 404, the court erred in not excluding it under Rule 403, as "the probative value" of the evidence was "substantially outweighed by the danger of unfair prejudice...." FED. R.EVID. 403. We review Rule 403 determinations most deferentially and will reverse only for "grave abuse" of the trial court's discretion. *United States v. Manner,* 887 F.2d 317, 322 (D.C.Cir.1989). Here there is none. Johnson's untruthful statement was probative of consciousness of guilt and was not likely in itself to give rise to any substantial prejudice on the part of the jury. Likewise,

Johnson's further argument that the court erred in not giving a limiting instruction confining the jury's consideration of the "bad acts" evidence to the purpose for which it was offered is without merit. Federal Rule of Evidence 105 states that when evidence that is admissible for one purpose but not admissible for another purpose is admitted, "the court, *upon request,* shall restrict the evidence to its proper scope and instruct the jury accordingly." FED.R.EVID. 105 (emphasis added). Johnson requested no such instruction. Moreover, such instruction might in fact be inconsistent with a defendant's deliberate trial strategy to minimize the jury's recollection of the unfavorable evidence. Accordingly, the district court did not err in failing to give a limiting instruction.

### B. *Elliott's Appeal*

█ Elliott raises an issue that goes to the foundation of the charge against her. She argues that the United States District Court lacked jurisdiction over her because she was charged solely with violations of D.C. municipal regulations and no federal crimes. She states that the D.C. code gives jurisdiction to the Superior Court of the District of Columbia for criminal cases under law applicable exclusively to D.C. and that the charge of failing to register a handgun is such a law. While Elliott admits that federal court has jurisdiction to hear cases involving local law when the local counts are joined with federal ones, D.C.Code Ann. § 11–502(3) (1989), she argues that joinder of the counts was not proper in this case because she was charged solely with D.C. violations. *Cf. United States v. Garnett,* 653 F.2d 558, 561 (D.C.Cir.1981) (noting section 502(3) enacted solely to eliminate the procedural difficulties of trying a single defendant for related federal and D.C. offenses in two courts).

While Elliott's argument has a facial logical appeal, we ultimately reject it. The United States District Court for the District of Columbia has jurisdiction of any offense under any law applicable exclusively to the District which is joined in the same information or indictment with any federal offense. D.C.Code Ann. § 11–502(3). In adopting

this section, Congress made federal and local offenses joinable in the same indictment, allowing for a single trial rather than two separate trials in separate courts. *See United States v. Shepard,* 515 F.2d 1324, 1330 (D.C.Cir.1975). Applying this section, we have upheld the district court's jurisdiction over local offenses so long as an indictment properly joins federal and local offenses under Federal Rule of Criminal Procedure 8. *See United States v. Kember,* 685 F.2d 451, 454 (D.C.Cir.), *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982); *United States v. Kember,* 648 F.2d 1354, 1359 (D.C.Cir. 1980) (per curiam).

Elliott rejoins that in *United States v. Koritko,* 870 F.2d 738, 739 (D.C.Cir.1989), we concluded that the district court lacked jurisdiction because the defendant was charged solely with D.C. offenses that were not joined with any federal offense. She contends that her case is distinguishable from those in which we have upheld jurisdiction in that she, like the defendant in *Koritko,* is charged solely with offenses under the District of Columbia Code not joined with any federal offense. However, we conclude that *Koritko* is not controlling, as Elliott, unlike Koritko, was joined with another defendant charged in the same indictment with federal violations. In short, we hold that under D.C.Code Ann. § 11–502(3), as applied in *United States v. Shepard* and other cases, United States District Court for the District of Columbia does have jurisdiction over a defendant charged solely with District of Columbia Code violations when she is properly joined with a defendant charged in other counts with violations of federal statutes.

■ The propriety of joinder of defendants is tested under Federal Rule of Criminal Procedure 8(b). *See United States v. Brown,* 16 F.3d 423, 427 (D.C.Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 257, 130 L.Ed.2d 178 (1994). Rule 8(b) provides that two or more defendants may be charged in the same indictment if they are alleged to have participated in the same act or series of acts constituting an offense or offenses, that such defendants may be charged in one or more counts together, and that all of the defendants do not have to be charged in each count. FED.R.CRIM.P. 8(b). Defendants' acts form a series within the meaning of the rule if they constitute part of a common scheme or plan, and joinder is proper so long as the government presents evidence before trial that the defendants' offenses arose out of the same scheme. *United States v. Halliman,* 923 F.2d 873, 883 (D.C.Cir.1991).

■ The indictment in the instant case charged Elliott and Johnson with the same criminal scheme or plan; namely, the possession of a firearm in D.C. without a valid registration. The prosecution made a pretrial proffer and introduced trial evidence for the proposition that Johnson and Elliott traveled together to a Maryland gun store where she bought the gun under her name at a time when they were both D.C. residents, that Elliott enabled Johnson to possess the gun, and that Johnson told the police that Elliott brought the gun into the house. Based on this evidence, joinder was proper. *See United States v. Wilson,* 434 F.2d 494, 498 (D.C.Cir.1970) (joinder "strengthened" by fact that defendants aided and abetted those offenses charged against other defendants).

Since the common scheme was apparent on the face of the indictment, the firearm counts against Elliott and Johnson were properly joined with the drugs counts against Johnson alone. *See Halliman,* 923 F.2d at 883. The fact that Elliott was not charged with aiding and abetting Johnson's drug distribution does not render joinder improper. Rule 8(b) specifies that defendants may be charged in one or more counts together or separately and that all defendants need not be charged in each count. It is sufficient that all participated in some way in the series of transactions that link the counts, and not necessarily in each act that makes up the series. *Halliman,* 923 F.2d at 883.

■ Adjunct to her questioning of the court's jurisdiction, Elliott contends that the United States Attorney lacked the authority to prosecute pure violations of District of Columbia municipal regulations because D.C.Code Ann. § 23–101(a) (1989) provides that "[p]rosecutions for violations of all police or municipal ordinances or regulations," a class concededly including those which she is charged with violating, "shall be conducted

... by the Corporation Counsel for the District of Columbia...." However, the United States correctly responds that section 23–101(d) authorizes the U.S. Attorney to prosecute regulatory offenses when they are joined in the same indictment with offenses prosecutable by the United States and "the other prosecuting authority consents." Since the D.C. regulatory offenses were joined with federal offenses in the indictment and the D.C. Corporation Counsel consented to Elliott's prosecution in district court, section 23–101(d) was satisfied. Accordingly, Elliott's claims must fail.

## III. CONCLUSION

Because the government did not present sufficient evidence to show that Johnson possessed with intent to distribute narcotics within 1000 feet of a school, his conviction on this charge is reversed. Additionally, because the D.C.Code charges against Elliott were properly joined with the federal charges against Johnson, the district court had jurisdiction over her. Although we have not discussed other contentions by the defendants, we have reviewed them all and find that none warrants reversal. Accordingly, all other convictions are affirmed.