

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-22-2002

# USA v. Cohen

Precedential or Non-Precedential: Precedential

Docket No. 01-3111

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Cohen" (2002). *2002 Decisions.* Paper 533.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/533

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed August 22, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 01-3111, 01-3318

UNITED STATES OF AMERICA,

        Cross-Appellant in 01-3318

v.

MICHAEL S. COHEN,

        Appellant in 01-3111

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

(Dist. Court No. 00-cr-00715-1)
District Court Judge: Honorable Berle M. Schiller

Argued June 24, 2002

Before: BECKER, Chief Judge, and ALITO and
AMBRO, Circuit Judges.

(Filed: August 22, 2002)

        Lynanne B. Wescott (Argued)
        Saul Ewing LLP
        Centre Square West
        1500 Market Street - 38th Floor
        Philadelphia, PA 19102

        Counsel for Appellant in 01-3111
        Counsel for Cross-Appellee in
        01-3318




        Patrick L. Meehan
        United States Attorney

        Laurie Magid
        Deputy United States Attorney for
         Policy and Appeals

        Robert A. Zauzmer
        Assistant United States Attorney
        Senior Appellate Counsel

        Amy L. Kurland (Argued)
        Assistant United States Attorney

Suite 1250
615 Chestnut Street
Philadelphia, PA 19106

Counsel for Appellee in 01-3111
Counsel for Cross-Appellant in
01-3318

OPINION OF THE COURT

ALITO, Circuit Judge:

This is an appeal and cross-appeal from a judgment in a criminal case. The defendant, former Secret Service Agent Michael Cohen, was indicted on charges stemming from his theft of $2,800 taken in seizures. A jury found Cohen guilty of one count of obstruction of justice, one count of making false statements, one count of witness tampering, and two counts of theft. After the trial, the District Court dismissed the witness tampering count on the ground that the court had incorrectly instructed the jury regarding that charge.

In this appeal, Cohen challenges the sufficiency of the evidence on the obstruction of justice count and also raises numerous sentencing issues. The government cross-appeals, contending that the District Court should not have dismissed the witness tampering count but instead should have granted a new trial. We agree with Cohen that the evidence is insufficient to sustain the obstruction charge, and we agree with the government that the error in the jury

2

instructions on witness tampering should have resulted in a new trial rather than outright dismissal of the count. We therefore reverse these portions of the judgment and remand for the entry of a judgment of acquittal on the obstruction of justice charge and for a new trial on the witness tampering count. In light of our disposition of these charges, we do not reach the sentencing issues at this time.

I.

Michael Cohen was hired by the United States Secret Service in August 1987. App. at 62. While with the Secret Service, he received numerous commendations and was "very well-thought of." Id. at 125. In 1999, Cohen was promoted to the position of Assistant to the Special Agent in Charge and was transferred from Kansas City to Philadelphia in order to supervise the Philadelphia office's fraud squad. Id. at 16. Shortly after his transfer, Cohen stole money seized during the course of two Secret Service investigations. He resigned his position in March 2000. Id. at 77.

A.

Cohen's first theft involved cash seized in the case of United States v. Ayubi, 01-CR-10-ALL (D.N.J.). The record

in that case reveals that on December 8, 1999, a criminal complaint was filed charging Mohammad Tariq Ayubi with one count of bank fraud, in violation of 18 U.S.C.SS 1344 and 2, and that a warrant for Ayubi's arrest was issued. On that same day, Cohen assisted another Secret Service Agent, Dean Vernon, with the arrest of Ayubi and the seizure of numerous items found in Ayubi's residence. App. at 27. Vernon was in charge of the case, but the assignment was his "very first case as an agent coming out of training." Id. at 27.

The agents transferred the seized items to the field office in Philadelphia to be sorted and inventoried in accordance with prescribed Secret Service procedure. During a review of the seized evidence, Vernon discovered an envelope containing "what appeared to be a thousand dollars of genuine United States currency." App. at 30. Vernon

"immediately picked [his] phone up and . . . paged Mr. Cohen on the intercom to call [him] at [his] extension." Id. at 31. Cohen came down to the squad, praised the agents for finding the money, and asked Vernon to see him in his office so that they could "take care of the money." Id. at 32-33. According to Vernon's testimony, when he arrived at Cohen's office, Cohen instructed: "[J]ust don't worry about it, I'll hold on to the money for now, when it's time to, you know, inventory the money, we'll take care of it . .. ." Id. at 34. Vernon further testified that Cohen "jokingly said" that "maybe when the case is over with, . . . . you might be able to keep the money and split it . . . . Christmas was coming . . . [and] it would be nice to have . . . the money at the end of the holiday. . . ." Id. at 34. Later, Cohen called Vernon to his office, and Cohen pulled out the envelope with the money. Vernon testified that Cohen asked him to "hold on to half of the money" and said that"if anybody says anything to you about the money . . . you've got half and I've got half." Id. at 36. Vernon testified he "held onto the envelop[e]," "went back to his office, sat down at [his] desk," "opened the envelop[e] up,""looked inside and there was four hundred dollars still in the envelop[e]." Id. at 37.

Shortly before the Christmas holiday, Cohen again called Vernon to his office. During this meeting, Cohen suggested that they donate the money to charity, and Vernon returned the $400. Id. at 38. After the agents came back from the Christmas holiday, Cohen again gave Vernon $200 and suggested that he deposit it into his travel account, an account that each agent maintains for official travel expenses. Vernon initially kept the money in his desk drawer but later became concerned that it might be stolen and therefore deposited it into his travel account. In early March, Vernon reported to his supervisor what he and Cohen had done. Investigating agents instructed Vernon to inventory the remaining money "on a personal property form, not a 1544 [form]," even though Vernon informed the agents that the money had been seized during the investigation of the Ayubi case. Id. at 55-56.

B.

Cohen's second theft involved the case of Iman Idress. On January 13, 2000, as part of a large-scale counterfeiting

investigation, Secret Service agents executed search warrants at Idress's residence and storage locker. App. at 7. Richard Kavanaugh, who had begun working for the Secret Service in September 1998, was the case agent, and this was his first major case. Id. at 3. In executing the warrants, agents seized two carloads of items, including a fire box. Id. at 9. After these items had been taken to Philadelphia, agents opened the firebox and found "hundreds of thousands of dollars of counterfeit money orders, all sorts of checkbooks and IDs and about $3,000 in cash." Id. at 11. The agents called Cohen, and he kept the money in his desk over the weekend. Cohen called Kavanaugh on Monday to congratulate him on the success of the search, and Kavanaugh mentioned that another agent had told him that approximately $3,100 had been found in a lockbox. Cohen testified that he informed Kavanaugh "that's not what I counted because I counted the money also . . . . I think there was approximately $1,200 in there." Id. at 73. According to Kavanaugh, when he mentioned starting asset forfeiture paperwork for the currency, Cohen told him to "hold off on that for a little bit" and added:"[W]e'll hold onto [the money] and if [Idress] doesn't say anything about it, we'll split it up amongst the team." Supp. App. at 13. Kavanaugh questioned Cohen about the propriety of splitting the money, but Cohen informed him that"[w]e did it all the time in Kansas City." Id. at 14.

When Kavanaugh returned to the office on Tuesday, he informed Cohen that he wanted to complete the "legal asset forfeiture" paperwork, in accordance with Secret Service procedure. Id. at 17. Cohen agreed, but told him that he would do "the asset forfeiture for the $1,159 that was seized." Id. at 17. Kavanaugh testified that he did not question Cohen about the discrepancy between the amount that the other agents had told him was found in the firebox and the amount that Cohen proposed to inventory because he "was afraid to" mention the difference; however, he discussed his belief that Cohen skimmed $1,800 from the seized $3,000 with other members of his squad. Id. at 18-19.

Cohen inventoried $1,173 on an appropriate Form 1544, but he signed the "evidence inventoried by" line rather than

the "reviewing supervisor" line.1  Because Cohen was a supervisor, he was "supposed to sign under 'Reviewing Supervisor.' " Id. at 24-25. As a result of this error, the form was returned to Kavanaugh to fill out properly. Kavanaugh

inventoried the $1,173 on a second Form 1544, which he signed as if he had inventoried the evidence. Cohen signed the form as the supervising agent.

After Kavanaugh filed the second Form 1544, he spoke with an Assistant United States Attorney in connection with the Idress case, and Kavanaugh informed the Assistant that the agents had seized $1,159 during the search. App. 27. Kavanaugh then prepared another search warrant and supporting affidavit in the Idress case. In the affidavit, which he swore to before a judicial officer, he stated that $1,159 had been seized during the search. Id.

On February 29, 2000, Cohen was called into the office of Assistant Special Agent in Charge Spurlock and told that internal affairs inspectors were in Philadelphia to speak to some of the agents on the squad. Spurlock informed Cohen that Kavanaugh would be on administrative leave until further notice. Cohen inquired about the reason for the leave, and Spurlock replied that there were allegations that money had been stolen from a case. Cohen immediately confessed to skimming $1,800 from money seized during the Idress investigation in order to spare the junior agents from an internal affairs investigation.

Cohen was subsequently indicted on two counts of theft (one concerning the Ayubi case and one concerning the Idress case), in violation of 18 U.S.C. S 654; two counts of obstruction of justice (again, one concerning the Ayubi case and one concerning the Idress case), in violation of 18 U.S.C. S 1503; one count of making false statements on the Form 1544, in violation of 18 U.S.C. S 1001; and one count of witness tampering, in violation of 18 U.S.C.S 1512, for his role in the events that culminated in Kavanaugh's swearing falsely before a judicial officer in applying for the

---

1. Cohen informed Kavanaugh that $1,159 had been seized; however, Cohen stated on the Form 1544 that agents had seized $1,173 in genuine currency. Kavanaugh informed the United States Attorney and testified in court that agents seized $1,159.

6

later Idress search warrant. Cohen was tried before a jury. At the close of the government's case, the District Court granted Cohen's motion for judgment of acquittal on the obstruction charge related to the Idress case, finding insufficient evidence of a pending judicial proceeding at the time of Cohen's actions. The jury subsequently found Cohen guilty on all of the remaining charges. At sentencing, the District Court dismissed the witness tampering count after the parties agreed the District Court had given incorrect jury instructions on that count.

The District Court sentenced Cohen to 33 months of incarceration, a $6,000 fine, and three years of supervised release. The Court determined that Cohen's offense had resulted in substantial interference with justice under

U.S.S.G. S 2J1.2(b)(2) and that Cohen had exercised a leadership position under U.S.S.G. S 3B1.1(c) and had abused a position of trust under U.S.S.G. S 3B1.3.

Cohen took this timely appeal. He argues, first, that there was insufficient evidence to support the Ayubi obstruction of justice count and, second, that the District Court committed a variety of errors in sentencing. The government cross-appeals, contending that the District Court erred in dismissing the witness tampering count instead of granting a new trial on that count.

II.

Cohen contends that his obstruction of justice conviction is not supported by sufficient evidence. He argues that there was no pending judicial proceeding at the time of his theft. He also contends that the government failed to prove that the stolen currency was evidence of a crime and thus failed to prove that, by stealing this money, he endeavored to obstruct justice. In reviewing the sufficiency of the evidence to support a criminal conviction, we must of course consider the evidence in the light most favorable to the verdict and ask whether a reasonable jury could have found that the contested elements were proven beyond a reasonable doubt. See United States v. Davis, 183 F.3d 231, 238 (3d Cir. 1999); United States v. Pungitore , 910 F.2d 1084, 1129 (3d Cir. 1990). Under this standard, the evidence here is insufficient.

Title 18 of the United States Code, section 1503 provides that "[w]hoever corruptly obstructs or impedes or endeavors to obstruct or impedes the due administration of justice, shall be guilty of an offense against the United States." We have interpreted the phrase "due administration of justice" to refer to a judicial proceeding and not "an investigation simpliciter." Davis, 183 F.3d at 239. Consequently, the pendency of a judicial proceeding is "a necessary prerequisite for a conviction for violation" of the statute. United States v. Nelson, 852 F.2d 706, 709 (3d Cir. 1988) (citing United States v. Simmons, 591 F.2d 206, 208 n.2 (3d Cir. 1979)). In order for a conviction to stand under 18 U.S.C. S 1503, "a defendant must have notice or knowledge of the pendency of some judicial proceeding constituting the 'administration of justice.' " Davis, 183 F.3d at 239 (quoting Nelson, 852 F.2d at 710).

In the present case, Cohen argues that the prosecution merely established that Ayubi had been arrested when Cohen stole the money found in the envelope, that"there was no testimony that there was any judicial involvement at all in the arrest," and that accordingly there was insufficient proof that a judicial proceeding within the meaning of our precedents was pending. Appellant's Br. at 11. In response, the government states the following:

        Vernon testified that Cohen assisted him in arresting

the defendant after he had obtained a warrant (App. 27a). To obtain a warrant it is necessary to apply to the court and present a criminal complaint. Fed. R. Crim. P. 3, 4(a). Thus, a judicial proceeding had been initiated.

Appellee's Br. at 24-25.

We hold that the government did not introduce sufficient evidence for a rational jury to find that Cohen misappropriated the money with the intent to obstruct the Ayubi investigation, and therefore do not need to determine whether the Ayubi investigation constituted a pending judicial proceeding within the meaning of 18 U.S.C.S 1503. In order to support Cohen's conviction for endeavoring to obstruct justice,2 the evidence must show, not only that a

_____

2. The government stipulated at trial that Cohen did not in fact obstruct that case.

8

judicial proceeding was pending and that Cohen had "knowledge or notice of the pending proceeding," but also that he "act[ed] corruptly with the intent of influencing, obstructing, or impeding the proceeding" and that his actions "had the 'natural and probable effect' of interfering with the due administration of justice." In re Grand Jury Proceeding Impounded, 241 F.3d 308, 317 n.8 (3d Cir. 2001) (citation omitted). The government failed to prove these latter elements.

The government has not pointed to a shred of evidence showing that the money that was found in the envelope and that Cohen misappropriated had any connection whatsoever to any charges that were investigated or considered in the Ayubi matter. Nor has the government pointed to any evidence showing that Cohen had any knowledge of any such connection. Indeed, the government has pointed to virtually no evidence in the record regarding the nature of the Ayubi investigation or prosecution. Only by examining the Ayubi docket sheets ourselves have we been able to learn the charges against Ayubi (bank fraud, in violation of 18 U.S.C. S 1544) and the disposition of those charges (he pled guilty to an information). 3 While it is certainly possible that the cash that Cohen stole might have had some bearing on those charges or on the investigation, the government has not called any such evidence to our attention.

As far as the government's brief discloses, the record of the present case simply shows that the money in question was found in an envelope that was seized from Ayubi's residence, and this is insufficient to show that misappropriation of the money constituted an attempt to obstruct the due administration of justice in the Ayubi case. The government does not point to any evidence in the record of this case as to why the envelope was seized. The

record of the case does not reveal that a search warrant was issued -- and, in fact, it appears from the docket sheets in the Ayubi case that there was no such warrant.

_____

3. The one-count information charged that Ayubi had defrauded and attempted to defraud several banks by depositing counterfeit checks into accounts and then withdrawing and attempting to withdraw those funds.

9

Nor does the record of the present case show that the agents who seized the cash thought at the time of seizure that the cash had potential investigative or evidentiary value; on the contrary, it appears that the presence of the cash in the envelope was not even discovered until the seized items were taken back to Philadelphia and examined. A great volume of items, including a vehicle, computers, and "boxes and boxes" of items, were seized from Ayubi's residence. Id. at 28. For all that the record shows of the present case, the envelope with the cash was simply something that the agents happened to take inadvertently. Thus, all that the record seems to show is that the cash was in an envelope that was seized-- properly or not -- from Ayubi's residence at the time of his arrest.

In order to sustain the charge of endeavoring to obstruct justice, the government was required to prove much more. The government was required to prove, beyond a reasonable doubt, that the defendant had the intent of "influencing, obstructing, or impeding the proceeding" and that his actions "had the 'natural and probable effect' " of doing so. In re Grand Jury Proceeding Impounded, 241 F.3d at 317 n.8. The government failed to meet that burden. Accordingly, we must reverse the conviction on the remaining obstruction of justice count and remand for entry of a judgment of acquittal on that count.

III.

The government contends in its cross-appeal that the District Court erred when it dismissed the witness tampering charge rather than ordering a new trial on that charge. In dismissing that count, the Court stated:

> The witness tampering charge should never have been made the way it was done; it was error for me to charge [the jury] on 1512(b)(2) as well as (b)(1). And because I think there was confusion in the jury's mind on that, I'm dismissing the conviction on [the witness tampering count]. . . . I do not think it serves anybody's purpose to order an entire new trial when there was error committed.

10

Appendix at 157.

The usual remedy for an error in a jury instruction is retrial, and the District Court did not provide any justification for its decision to dismiss that count. Nor has the defendant provided any plausible justification in his appellate brief. We surmise that the District Court dismissed the witness tampering count because a conviction on that charge would not have affected Cohen's term of imprisonment. That was not a legally correct reason for dismissal, even if it seemed at the time to make practical sense. Under Fed. R. Crim. P. 29, a judgment of acquittal may be entered only if "the evidence is insufficient to sustain a conviction of such offense or offenses." The District Court made no such finding, and therefore the appropriate remedy was to order a new trial. See Fed. R. of Crim. P. 33. Moreover, in light of our reversal of the defendant's conviction for obstruction, it is no longer true that the outcome of a trial on the witness tampering charge would not affect the defendant's sentence. We reverse the order dismissing the witness tampering count and remand for a new trial on that charge if the government elects to go forward.

Although the defendant raised several issues regarding the calculation of his sentence, we do not reach those issues at this time. Several of the issues related to the guideline for the obstruction count, as to which we have reversed. In addition, because there may be a retrial on the witness tampering charge, the factors that may ultimately come into play in calculating the defendant's sentence cannot be addressed at this time.

IV.

For these reasons, the judgment of the District Court is reversed in part and the case is remanded for further proceedings in accordance with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

11