NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 10-2315
———

UNITED STATES OF AMERICA

v.

RICKIE DURHAM,
Appellant
———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No.2-09-cr-00405)
District Judge: Hon. Timothy J. Savage
———

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 24, 2011

Before: BARRY, AMBRO, and VAN ANTWERPEN, *Circuit Judges*.

(Filed: June 24, 2011)
———

OPINION OF THE COURT
———

VAN ANTWERPEN, *Circuit Judge*.

A jury found Rickie Durham guilty of obstruction of justice, in violation of 18

U.S.C. § 1505, and providing materially false statements to law enforcement, in violation

of 18 U.S.C. § 1001. Following conviction at trial, Durham filed a motion for a judgment

of acquittal challenging the sufficiency of the evidence against him. The District Court

denied his motion and Durham timely appealed. For the reasons that follow, we will affirm.

## I.

Because we write solely for the parties, we recount the facts and proceedings only to the extent required for resolution of this appeal. In the early morning hours of August 10, 2005, Durham, then a Philadelphia police officer assigned to a joint state and federal violent gang and drug task force, met with other law enforcement officers at a staging ground outside of Philadelphia. Durham was to assist in the execution of several sealed search warrants and an arrest warrant stemming from an ongoing investigation into a large-scale cocaine distribution operation headed by an individual named Alton Coles.[1] Shortly after arriving at the staging ground, Durham learned that the residence of Asya Richardson ("Asya"), the sister of Durham's childhood friend Jerome Richardson, Jr. ("Jerome"), was among those locations to be searched as part of the Coles investigation. Prior to his arrival, Durham was uninvolved with the Coles investigation and unaware of the fact that Asya's home was to be searched. Durham had known for some time, however, that Asya was Coles' girlfriend and that Coles was a suspected drug dealer.

---

[1]    In addition to various narcotics violations, Coles and his co-conspirators were suspected of committing firearms and money laundering violations.

[2]    Coles, Asya, and several other co-conspirators were arrested and ultimately charged following the execution of warrants on August 10, 2005.

[3]    The District Court had jurisdiction under 18 U.S.C. § 3231; ours is premised on 28 U.S.C. § 1291.

[4]    Courts of Appeals have broadly construed the meaning of "pending proceeding" as used within § 1505. *See United States v. Schwartz*, 924 F.2d 410, 425 (2d Cir. 1991) (noting that "[t]he term 'any proceeding' as used in § 1505 has been defined broadly" and

After learning that Asya could be implicated in the Coles investigation, Durham called Jerome from his mobile phone shortly before 3 a.m. Jerome later testified that during the ensuing conversation, "[Durham] said that they was going to take, take, put the dude down and if [your] sister is involved, she is going down, too. . . . [W]e are getting ready to take the dude down." (App. at 285-86.) Jerome understood "the dude" to be a reference to "Alton Coles." (*Id.* at 285.) Durham also informed Jerome that events were to take place "today or this morning" at "6 O'clock or something like that." (*Id.* at 286.) Immediately thereafter, Jerome made several phone calls in an effort to contact his sister Asya. When Jerome reached Asya, he informed her that "if you are around the wrong people, you need to get out of there, you need to get out right now." (*Id.* at 287.) A short time later, Jerome called his sister again. During this subsequent exchange, Asya activated the speaker function on her phone and a male joined the conversation. Jerome reiterated his warning, explaining "I don't know you, I don't know what's going on but my sister need to leave wherever she at if she is in your environment." (*Id.* at 292.)

Soon thereafter, federal law enforcement officers who were monitoring Coles' telephone line recorded a flurry of outgoing calls from Coles to his co-conspirators. During one conversation, Coles instructed a woman named Monique Pullins to throw a handgun she was storing for him down the trash chute of her building. Coles attempted numerous times to contact two other co-conspirators as well. In spite of these communications, law enforcement officers executed the search warrants and arrest warrant later that morning.

Concerned by the prospect that a leak had come from within their ranks, FBI and ATF agents proceeded with an internal investigation in the years following the raids and arrests associated with the Coles investigation.[2] Based on a review of phone records, federal agents learned of the contact between Durham and Jerome during the early morning hours of August 10, 2005. Equipped with this information, agents interviewed Durham on several occasions. According to testimony of the interviewing agents, on June 27, 2008, Durham initially denied contact with Jerome on the morning of the raids. When questioned a second time he stated that he could not recall if he had spoken with Jerome on August 10, 2005. Once shown records indicating otherwise, Durham explained that he could not remember calling Jerome, but that he knew for a fact he had not discussed the raids scheduled for later that morning. Investigators spoke with Durham again several months later. In a conversation in January 2009, Durham acknowledged that he had called Jerome on the morning of the raid, but he insisted that the purpose of the call was simply to ascertain Asya's phone number in order to assist with the ongoing investigation. Durham explained that this may have been a bad judgment on his part, but that he did not leak any information or intend to interfere with the investigation.

Thereafter, on June 16, 2009, a federal grand jury indicted Durham on six counts: obstruction of justice, in violation of 18 U.S.C. § 1505 (Counts One, Three, and Five), providing advance notice of a search, in violation of 18 U.S.C. § 2232(c) (Count Two),

_____

[2] Coles, Asya, and several other co-conspirators were arrested and ultimately charged following the execution of warrants on August 10, 2005.

and providing materially false statements to law enforcement, in violation of 18 U.S.C. § 1001 (Counts Four and Six).  On September 24, 2009, following a several day jury trial, Durham was convicted of two counts of obstruction of justice (Counts One and Five), and one count of making a materially false statement to law enforcement (Count Six).  He was acquitted of the remaining charges.  During trial and again following the jury's verdict, Durham moved for a judgment of acquittal pursuant to Federal Rule of Civil Procedure 29.  The District Court denied his motion in both instances.  A timely appeal followed.

## II.[3]

Our review of a district court's decision to deny a motion for judgment of acquittal based on the sufficiency of the evidence is plenary, and we apply the same standard as the district court.  *United States v. Starnes*, 583 F.3d 196, 206 (3d Cir. 2009).  In reviewing the jury's verdict, we "must consider the evidence in the light most favorable to the [G]overnment and affirm the judgment if there is substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt."  *United States v. Frorup*, 963 F.2d 41, 42 (3d Cir. 1992) (citation omitted).  Thus, we "must credit all available inferences in favor of the [G]overnment."  *United States v. Sparrow*, 371 F.3d 851, 852 (3d Cir. 2004) (internal quotations and citation omitted).  "[T]he evidence need not unequivocally point to the defendant's guilt as long as it permits a finding of guilt beyond a reasonable doubt."  *United States v. Davis*, 183 F.3d 231, 238 (3d Cir. 1999).

---

[3]  The District Court had jurisdiction under 18 U.S.C. § 3231; ours is premised on 28 U.S.C. § 1291.

Moreover, "'[t]his review should be *independent* of the jury's determination that evidence on another count was insufficient.'" *United States v. Vastola*, 989 F.2d 1318, 1331 (3d Cir. 1993) (quoting *United States v. Powell*, 469 U.S. 57, 67 (1984)). This particularly deferential standard places a very heavy burden on a convicted defendant to demonstrate that there is legally insufficient evidence to support the jury's verdict. *United States v. Rawlins*, 606 F.3d 73, 80 (3d Cir. 2010).

### III.

On appeal, Durham contends that the Government presented insufficient evidence to sustain his convictions for: (Count One) obstruction of justice, in violation of 18 U.S.C. § 1505, for leaking details on August 10, 2005 of the impending raids and arrests connected with the Coles investigation; and (Counts Five and Six) for making materially false statements to federal investigators on January 16, 2009, in violation of 18 U.S.C. § 1001, and thereby also obstructing justice by interfering with a pending agency proceeding, in violation of 18 U.S.C. § 1505. Because Counts Five and Six both pertain to conduct occurring on January 16, 2009, we will address the sufficiency of the evidence with respect to those two counts together and separately from our discussion of Count One.

### A.

Durham's challenge to his conviction under Count One is limited to whether sufficient evidence was presented to prove that he acted with the requisite "intent to subvert or undermine the integrity of the federal investigative proceedings on August 10, 2005." (Durham's Br. at 11.) He argues that his intent was merely to help Asya

Richardson by informing her of a "potential legal problem" as opposed to "deliberately and willfully" obstructing the ongoing investigation. (*Id.* at 19.)

To prove obstruction under 18 U.S.C. § 1505, the Government must establish: "'(1) that there was an agency proceeding;[4] (2) that the defendant was aware of that proceeding; and (3) that the defendant intentionally endeavored corruptly to influence, obstruct or impede the pending proceeding.'" *United States v. Warshak*, 631 F.3d 266, 325 (6th Cir. 2010) (quoting *United States v. Bhagat*, 436 F.3d 1140, 1147 (9th Cir. 2006)); *see also United States v. Quattrone*, 441 F.3d 153, 174 (2d Cir. 2006). The District Court's instructions to the jury, provided without objection at trial or challenge on appeal, reflected each of these elements. In addition, at the request of the Government and with Durham's permission, the District Court included in its jury instructions a fourth element requiring proof that "the natural and probable effect of the defendant's conduct was interference with the investigation . . . [and] that the defendant was aware of this effect."[5] (App. at 416.)

---

[4] Courts of Appeals have broadly construed the meaning of "pending proceeding" as used within § 1505. *See United States v. Schwartz*, 924 F.2d 410, 425 (2d Cir. 1991) (noting that "[t]he term 'any proceeding' as used in § 1505 has been defined broadly" and collecting cases); *United States v. Browning, Inc.*, 572 F.2d 720, 723-24 (10th Cir. 1978) (holding that the term "proceeding" encompassed both the investigative and adjudicative functions of a federal agency). Durham does not dispute that the ATF and IRS criminal investigation into Coles' organization constituted such a proceeding within the meaning of this statute and we find no reason to hold otherwise.

[5] Based upon our review of the trial transcript, the Government appears to have requested the addition of this element in light of the Supreme Court's interpretation of a related obstruction statute, 18 U.S.C. § 1503. *See United States v. Aguilar*, 515 U.S. 593, 599 (1995) ("In other words, the endeavor must have the natural and probable effect of interfering with the due administration of justice." (internal quotations and citations omitted)). We will assume without deciding that this requirement applies to § 1505 as

Crediting all available inferences in favor of the Government, *Sparrow*, 371 F.3d at 852, we believe that the evidence was sufficient to allow a rational juror to find that Durham acted with the requisite intent. As federal agents testified, Asya was one of several subjects of the Coles investigation.[6] Moreover, testimony indicated that Durham, aware that Asya and Coles were romantically involved, learned during the early morning hours of August 10, 2005 that her residence was to be searched in connection with the investigation of Coles' trafficking organization. Further testimony and admitted phone records indicated that Durham called and spoke to Jerome soon after this discovery, and that during their conversation, Durham warned Jerome that authorities were about to act with regard to Coles and that Asya was at risk as well. Given the evidence regarding the timing and content of this conversation as well as Durham's knowledge of Asya's relationship to Jerome and Coles, a rational trier of fact could have concluded beyond a reasonable doubt that Durham acted "corruptly . . . [to] obstruct" the investigation. 18 U.S.C. § 1505; *see also United States v. Price*, 951 F.2d 1028, 1031 (9th Cir. 1991) ("The requisite intent to violate section 1505 . . . is merely that the defendant must have acted

well. We also note our belief that such a requirement appears to be in accord with *Aguilar* and logical given structural similarities between § 1503 and § 1505.

[6]  One of the federal agents who testified at trial confirmed that Aysa was a subject of the criminal investigation into Coles' drug trafficking organization. In reviewing the record, however, we found no direct evidence that Durham knew Asya was personally suspected of criminal involvement. Nonetheless, we believe that the jury could reasonably have inferred that Durham was aware of this suspicion based on the fact that her residence was scheduled for search on August 10, 2005 and given her relationship to Coles. Even if Durham did not know that Aysa was personally suspected of criminal involvement, the fact that he knew her home was scheduled for search as part of the broader investigation supported an inference that, by calling Asya's brother and leaking details about the raids, Durham intended to obstruct the Coles investigation.

corruptly, i.e., that the act must be done with the purpose of obstructing justice." (internal

quotations and citation omitted)). Accordingly, we reject Durham's contention that the

Government failed to present sufficient evidence of intent.[7]

We also believe that the evidence presented at trial was legally sufficient with

respect to each of the remaining elements required to prove the obstruction of justice

offense alleged in Count One. Agents testified that as of August 10, 2005 the ATF and

IRS were investigating Coles and his co-conspirators for their suspected roles in a drug-

trafficking organization. Testimony also indicated that Durham was aware of this

investigation on the morning of August 10, 2005 when he called Jerome. Thus sufficient

evidence was presented to allow a rational juror to find that an agency proceeding was

pending and that Durham was aware of this fact. Finally, regarding the fourth additional

element, the evidence was also sufficient to establish that a natural and probable effect of

Durham's call to Jerome was interference with the Coles investigation and that the

defendant was aware of this consequence. *See Aguilar*, 515 U.S. at 599. Here, the

---

[7]     Durham's argument that the Government failed to prove intent because he only
called Jerome to warn Aysa appears to confuse intent with motive. Even if Durham's
primary motivation was to extricate the sister of his childhood friend from a troubled
situation, he still could have intended to obstruct the Coles investigation to accomplish
this goal. *See United States v. Hughes*, 211 F.3d 676, 683 n.4 (1st Cir. 2000) (noting that
a defendant could act with the requisite intent for extortion even if his primary motive
was to conceal a different crime rather than obtain funds).
        We also reject Durham's contention that the appeal before us is analogous to
*United States v. Cohen*, 301 F.3d 152 (3d Cir. 2002). In *Cohen*, a secret service agent
was convicted of obstruction of justice for stealing funds recovered during an arrest. In
reversing the conviction, we noted that there was not "a shred of evidence" indicating the
stolen funds "had any connection whatsoever to any charges that were investigated or
considered." *Id.* at 157. Here, considerable evidence was presented that Durham knew
Asya was connected to the ongoing Coles investigation. Accordingly, the case before us
is not analogous to *Cohen*.

evidence showed that Durham provided critical details about a pending raid and arrest to an individual whose sister was romantically involved with the main target of an ongoing criminal investigation. From these facts alone, a rational juror could have concluded that a natural and probable consequence would be that this information would pass from Jerome to Asya and Coles. Here, the evidence showed that this likelihood actually occurred only a short time later.

Accordingly, we believe that the evidence was sufficient to sustain Durham's conviction for violating 18 U.S.C. § 1505, as alleged in Count One.

## B.

Durham also contends that insufficient evidence was presented at trial to sustain his convictions under Counts Five and Six for making materially false statements to federal investigators on January 16, 2009, in violation of 18 U.S.C. § 1001, and thereby also obstructing a pending agency proceeding, in violation of 18 U.S.C. § 1505. Durham appears to argue that the evidence was insufficient with respect to both of these counts because he never intended to obstruct the Coles investigation in the first instance and therefore lacked the intent required to make false statements about his conduct and obstruct the ensuing internal investigation.

Under 18 U.S.C. § 1001(a)(2), the Government must prove that a defendant "knowingly and willfully . . . [made] any materially false, fictitious, or fraudulent statement or representation" in a matter within the jurisdiction of a branch of government. "[W]hen willfully . . . is used in conjunction with knowingly, as it is in § 1001(a), it usually requires the government to prove that the defendant acted not merely voluntarily,

but with a bad purpose, that is, with knowledge that his conduct was, in some general sense, unlawful." *Starnes*, 583 F.3d at 210-11 (citing *Bryan v. United States*, 524 U.S. 184, 192-93 & n.13 (1998)) (internal quotations omitted).

The evidence presented at trial is sufficient to sustain Durham's conviction under Count Six for making false statements to federal agents. As an initial matter, Durham could have intended to make false statements to investigators on January 16, 2009 irrespective of whether he intended to obstruct the Coles investigation on August 10, 2005. As such, Durham's argument that he could not have intended to lie because he never intended to obstruct the Coles investigation in the first instance is unavailing. Here, agents testified at trial that on January 16, 2009, Durham told investigators that he had not leaked any information about the raids and called Jerome only to obtain Asya's phone number to assist with the investigation. Jerome's testimony as to the content of their discussion conflicted with Durham's account. In addition, federal agents testified that on August 10, 2005, they already possessed Aysa's phone number and that an experienced investigator likely would have assumed as much given her relationship to Coles and the apparent extent of the investigation. Finally, agents testified that Durham, who was uninvolved with the Coles investigation aside from the assistance he was to provide on the day of the raids, was never asked to obtain Asya's phone number. From this evidence, a rational juror could have inferred beyond a reasonable doubt that Durham's statements were false, material, and made knowingly and willfully to deceive investigators.

Lastly, we find the evidence sufficient to sustain Durham's conviction under Count Five for obstructing the internal investigation by making false statements during this same interview. For the same reasons discussed above, Durham's argument regarding his alleged lack of intent to obstruct the Coles investigation in the first instance is unavailing. Regarding the sufficiency of the evidence as to Count Five, Durham was clearly aware of the ongoing internal investigation, and the jury could have inferred that he intended to provide false information in order to thwart the internal investigation. *See Warshak*, 631 F.3d at 325. In addition, a rational juror could have found that providing false statements would naturally and probably interfere with the ongoing internal investigation and that Durham was aware of this likelihood. *See Aguilar*, 515 U.S. at 599.

Accordingly, we find that the evidence presented at trial was sufficient to permit a rational trier of fact to find that Durham was guilty beyond a reasonable doubt of Counts Five and Six.

**IV.**

For the foregoing reasons, we will affirm Durham's judgment of conviction and the District Court's denial of his motion for a judgment of acquittal.